THE UNITED STATES OF AMERICA *v.* JOHN S. WATTS ET AL.

EVIDENCE NOT EMBODIED IN BILL OF EXCEPTIONS.—Where the evidence in a cause is not embodied in the bill of exceptions, the instructions given or refused can not be reviewed on appeal.

RECEIVER AND DEPOSITARY OF PUBLIC FUNDS, LIABILITY OF.—A receiver and depositary of public funds of the United States is a debtor of the government to the full amount of the funds received by him, and is an insurer of their safety. Hence, in an action against the sureties on the bond of such an officer for an alleged defalcation, it is no defense to show that he was murdered and robbed of the moneys in his custody by an irresistible force.

APPEAL from the district court of the first judicial district. The opinion states the case.

*John S. Watts, in propria persona*, for the defendants and appellants: 1. The court erred in not allowing the motion for continuance, because it was shown that a just and meritorious claim against the United States, to the extent of three thousand dollars, existed, had been presented and disallowed, and it was lawful, right, and proper to present to the jury the facts for their consideration, in order that no more should be recovered from the securities than what was lawfully due from the principal.

2. The allowance of interest on the assessment of damages from the date of the loss, or from six months after that date, is illegal and void, and no interest could be lawfully recovered until after the fixing of the damages by the verdict of a jury, so far as the rights of the securities are involved in the question of interest.

3. The refusal of the court to allow one of the defendants, and the attorney of the other defendants, to argue the cause before the jury, was error of such importance as not only to justify, but demand, a reversal of this judgment. A party whose life, liberty, or property is at stake has a constitutional right to be heard in person or by his counsel, and this right is positive, absolute, and mandatory on the court, and not discretionary, and the right of defendant or his counsel to make a respectful and courteous argu-

ment to the jury upon any question of fact involved in the case, or comment on or explain the amount found by the evidence to be due the plaintiff, is not left to the discretion or whim of any court, no matter how just, impartial, or intelligent. This error, if none other was apparent on the record, is amply sufficient to demand a reversal of this judgment and require a new trial in the cause.

4. The court erred in excluding the evidence offered by defendants, which was certainly material as to the right of recovery upon the question of interest on the actual amount found due, not by the *ex parte* account of the accounting officers of the treasury, but the amount found due by the verdict of a jury.

5. The court erred in not allowing the evidence offered by the defense to go to the jury in bar of all right of recovery against the securities; for the true intent, meaning, purpose and obligation of the securities was to secure the United States against the loss resulting from neglect, carelessness, misapplication, conversion, or embezzlement of the funds of the United States by the depositary to whom intrusted, and not to hold them responsible for loss resulting from the act of God or the king's enemies, and to plunder and ruin securities, without any fault or neglect of the principal, would be a reproach to public justice, and to the honor, justice, equity, and fame of a great and enlightened nation.

In the case of *United States* v. *Jones*, 8 Pet. 375, it was held, in an action by the United States against an individual debtor, that a mere general charge of an aggregate indebtedness certified from the books of the treasury department, *e. g.*, "to accounts transferred from the books of the second auditor for this sum, standing to his debit under said contract on the books of the second auditor, transferred to his debit on those of this office, forty-five thousand dollars," is not competent evidence.

The transcript in this case introduced in evidence on the part of the United States, and made the basis of the judgment, was not legal evidence, and should have been excluded from the jury. In support of the above principle

it was decided in the case of *United States* v. *Laub*, 4 Cranch
C. C. 703, that "a transcript charging a balance of a former
settlement is not *per se* evidence," and it was so held in the
case of *United States* v. *Edwards*, 1 McLean, 467; and in
*United States* v. *Hilliard*, 3 Id. 324, that "the original items
on which the accounting officers acted must be stated."

In the case of *United States* v. *Patterson*, Gilp. 44, it was
decided that the report of an auditor of the treasury depart-
ment of a balance due from a person accountable for public
moneys is a guide to the controller of the treasury as to the
amount to be sued for, but is no evidence of the debt on an
action against such person. It is not a transcript within
the meaning of the act of March 3, 1797: 1 Stat. at Large,
512.

In the case of James L. Collins, the account against him
did not arise in the ordinary mode of doing business at the
treasury, but after the funds were placed in the hands of
other disbursing officers, and then given to the depositary
at Santa Fe for safe keeping and payment, not to the United
States, but to the disbursing officers to whom they had been
sent for use, and under such a state of facts it has been re-
peatedly held "that an account stated at the treasury depart-
ment, which does not arise in the ordinary mode of doing
business in that department, could derive no additional
validity from being certified under the act of congress." In
support of this ruling the court is cited to the following
cases: *United States* v. *Buford*, 3 Pet. 13, 29; *Cox* v. *United
States*, 6 Id. 173; *United States* v. *Jones*, 8 Id. 375, 387.

By a careful examination of the above statement, and the
cases cited in its support, it must be clear and undoubted
that the transcript in this case was not sufficient to authorize
or justify the judgment rendered against the appellants,
and if the statements of the account and books of James L.
Collins are to furnish evidence in the case to establish the
supposed indebtedness, they are also evidence, *prima facie*,
in favor of James L. Collins, depositary, and his securities,
and as the books are correct and complete, and lawfully
account for every dollar of the public funds in the hands
of the depositary at his death, some further evidence of

neglect, want of care, conversion, or embezzlement of the funds of the United States was required to fix liability upon him or his securities.

After the death of James L. Collins, the funds were exposed to loss or plunder; they went into the hands of E. W. Little and General Getty without any responsibility or proof, and for days were in their possession, under their control, with opportunity to take and dispose of what funds they might desire, and then charge the deficit on the upright, careful, faithful, and heroic old custodian who sacrificed his life in defense of the funds of the United States, and by that sacrifice of life, saved to the United States several hundred thousand dollars from the plunderers, thieves, and assassins, and for a great and just nation to set up, in its own favor, principles of law and rules of evidence at war with all our notions of human rights and human accountability, would dishonor and degrade it in the estimation of the civilized world, and of all just, intelligent, and upright men.

For these reasons the supreme court of the territory of New Mexico is most respectfully asked to reverse and set aside and vacate the judgment in this case, and direct in the further hearing of this case as follows: 1. That the transcript in the record in this case is insufficient to support the judgment. 2. That the demurrers to the defendants' pleas be overruled, and the plaintiff required to answer them. 3. That the counsel of the defendants be allowed to argue the cause before the jury as to all disputed questions of fact, or conclusions from facts, proven in the case before the jury. 4. That the court below be directed to allow the jury to estimate the damages and interest to constitute the verdict, and not require them to take it prepared from any other source. 5. That the instructions to add interest to the supposed amount of indebtedness, anterior to the finding of the breach of the bond, is erroneous, and should not be given to the jury. 6. In this case, the court below should, on the reversal of the case and the granting of a new trial, be instructed that this suit being for unliquidated damages on the alleged breaches of an official bond, no

interest is chargeable except on the amount found due by a verdict of the jury.

On this point see *Gilpins* v. *Consequa*, Pet. C. C. 85, in which the court holds that "interest is not allowable on unliquidated damages." In the case of *Youqua* v. *Nixon*, Id. 224, it was held that "damages for breach of contract do not bear interest." The supreme court of the United States has decided in a case exactly analogous to this that "if there has not been a previous demand of the penalty of a bond or an acknowledgment the whole is due, interest is recoverable only from the commencement of the suit:" See *United States Bank* v. *Magill*, 1 Paine, 661. In this case the question of interest was discretionary with the jury, and not with the court. In the case of *Killingly* v. *Taylor*, 1 Cranch C. C. 99, it was held "that interest on a balance of an account was discretionary with the jury." In the cases of *Willings* v. *Consequa*, Pet. C. C. 172; *Gilpins* v. *Consequa*, Id. 85, it was held that "it is in the discretion of the jury to give interest in the name of damages." See, on question of interest on unliquidated damages, Sedg. on Dam., pp. 437, 438, note 3.

Without proof of the time when payment was rendered, interest can be allowed only from the time of suit brought: *Rawson* v. *Grow*, 4 E. D. Smith (N. Y.) 18. See also Sedg. on Dam., p. 437, note 1, citing case of *Holmes* v. *Rankin*, 17 Barb. (N. Y.) 454.

*S. B. Wheelock, assistant United States district attorney,* for the plaintiff and appellee. The first question raised before this court by the record from the court below is presented in the exception of defendants to the ruling of the court in refusing to allow them to file two additional pleas, five pleas having already been filed at a previous term of the court in behalf of two of the defendants, and default entered against the others. By consent of the attorney for plaintiffs, the default was set aside and the parties allowed to file the same pleas as those already before the court; whereupon all the defendants by their attorneys asked permission to file two additional pleas (6 and 7) which was re-

fused by the court. Aside from the character of the pleas, which was objectionable, it was entirely within the discretion of the court to admit or reject additional pleas at that stage of the proceedings; and there being no legal obligation resting upon the court to comply with the request, its ruling on the subject is not proper matter for review by this court. This has so frequently been decided by all appellate courts that it hardly merits discussion: 2 How. 263; 13 Id. 212; 16 Id. 14, 571, 599; 20 Id. 264, 535; 2 Wall. 320.

The second point presented by the record is of a similar nature, the defendants excepting to the ruling of the court in permitting an amendment to plaintiff's petition in the description of the bond sued on. As the bond accompanied the petition and was made a part of it, the amendment was a formal one only, and could not result to the prejudice of the defendants; and by the laws of the territory, Revised Statutes, sec. 27, p. 196, the statutes of the United States, 1 Id. 91, and the uniform practice of the district courts, amendments are allowed at any time before judgment.

The third question raised by the record is on the decision of the court sustaining the demurrer to the fourth plea, which sets up the murder of James L. Collins, the principal in the bond, and the subsequent robbery of the depository, as a bar to this action to recover on the bond. Suits on official bonds have been of frequent occurrence since the foundation of our government, and many cases have been carried to the supreme court of the United States for final adjudication. The decisions of that court from its establishment to the present time have been, without exception, to the effect that robbery, even by an irresistible force and without any suspicion of collusion, constitutes no defense to an action of debt on an official bond; and that nothing but an exact performance of the conditions expressed in the bond will relieve the parties from their liability. Very recent decisions of that court (*Boyden* v. *United States*, 13 Wall. 17; *Bevans* v. *United States*, Id. 56) review and affirm the many previous decisions rendered on that point, and are conclusive. The allegation of murder could add noth-

ing to the weight of the plea, for the obligation of a bond is not terminated by death, nor is a debt discharged thereby.

Defendants next excepted to the ruling of the court below in refusing to require the United States to file an itemized account. This was an appeal to the discretion of the court, and can not therefore be assigned as error. The record also fails to show any reasons whatever for such a motion, and coming as it did at the second term of the court, after the suit was commenced, it was properly overruled. Defendants also excepted to the refusal of the court to grant a continuance; but this being a matter entirely within the discretion of a court, can not be reviewed.

The statutes of the United States, 1 Stat. 512, require prompt and summary action in suits against delinquent officials. The reasons given in the motion for the continuance were entirely insufficient.

The objection made to the instruction of the court given to the jury is " entirely without merit," as was decided in *Bevans* v. *United States,* 13 Wall. 62. As the court below in this case also directed the jury to give interest on the amount from the time of the default, the above decision of the United States supreme court disposes of exceptions taken in this case on the same subject. The instructions asked for by the defendants were properly refused, as there was no evidence to justify them. Abstract principles of law are not properly embodied in a charge to a jury, when there is no evidence to render them necessary; and the record fails to disclose any evidence whatever on the part of the defendants. Indeed, none of the evidence supposed to have been before the district court is brought up by the record, and therefore no ruling of that court which might have been influenced by the evidence can be reviewed by this court.

The next question presented by the record is the refusal of the court to allow the attorneys for the defendants to address the jury at the close of the evidence. As there had been no evidence in behalf of the defendants and the court was bound to instruct the jury to find for the plaintiffs,

there being no disputed facts upon which to base an argument, to allow the request would have been frivolous.

The only remaining point is the refusal of the court to allow the defendants to introduce evidence of matters which were admitted in open court by the plaintiffs. Plaintiff's admission was the highest evidence that could be produced, and was conclusive. The proposition of defendants to introduce secondary evidence of that which was not only not denied but was expressly admitted, was novel; but the action of the court in rejecting it can hardly be deemed erroneous.

By Court, BRISTOL, J.:

This is an action of debt, brought in the district court of the United States for the first judicial district of New Mexico, against John S. Watts and others as sureties on the official bond of James L. Collins as receiver of public moneys for the district of lands subject to sale at Santa Fe, and depositary to receive payment of moneys due the United States, for the purpose of recovering the amount of an alleged defalcation on his part as such receiver and depositary by omitting to safely keep and pay over, according to the terms and conditions of such bond, certain moneys belonging to the United States which he had received by virtue of his office. Before the commencement of the action, said Collins, the principal, and one of the sureties on the bond had died. The action, therefore, was brought against the surviving sureties, who have appeared to defend the suit. The pleas of the defendants admit the execution and delivery of the bond, with the conditions thereof, as alleged in the petition of the plaintiffs, but traverse the allegations showing a defalcation on the part of said Collins, and allege full performance of the terms and conditions of the bond by him to be kept and performed. And for a further and fourth plea, they allege the murder of said Collins while defending the public funds in his possession as such receiver and depositary, and that the depository was thereupon robbed of such funds to the amount of the alleged defalcation without fault on his part and by irresistible force.

This fourth plea was demurred to on the ground that it did not allege facts constituting a defense. The demurrer was sustained by the court below, and thereto the defendants excepted. Exceptions were also taken by the defendants to the ruling of the court below in refusing to grant a continuance on affidavits and motion, in refusing to allow the defendants to file additional pleas after the time they had been ruled to plead had expired, in sustaining a motion of the plaintiffs to amend their petition, in refusing to give instructions to the jury asked for by the defendants, in overruling a motion of the defendants to require the plaintiffs to file an itemized account, in refusing permission to the attorneys for the defendants to address the jury, and in refusing the introduction of evidence of facts already admitted by the plaintiffs. The defendants also excepted to the charge of the court to the jury. The foregoing facts and exceptions cover substantially all the grounds of error assigned by the appellants.

The cause has been brought to this court for review on bill of exceptions and appeal. Neither the instructions given to the jury by the court below, nor the instructions asked for by the defendants, can be reviewed by this court, for the reason that the record does not contain the evidence before the jury on which proper instructions to the jury must be founded. In the absence of the evidence, the presumption of law is that there was no conflicting evidence, and that the positive instructions of the court to the jury were in accordance with the legal effect of the evidence submitted: 13 Wall. 56.

The principal question before this court in this case is as to the correctness of the ruling of the court below in sustaining the demurrer to the fourth plea. The facts alleged in this plea are not in all respects identical with those of any other adjudicated case. The theory of the counsel for the defendant is that Collins having been murdered, a vacancy in the office of receiver and depositary immediately ensued, and that the depository having been robbed during such vacancy so brought about, the liability of the sureties on the deceased's official bond are discharged from liability

to the extent of the public funds of which the depository was robbed. It is only by reference to well-established principles of law, defining and regulating the nature and extent of obligations like those contained in the official bond in question, that we are enabled to test the soundness of this theory. Nothing seems to be better settled than that a receiver and depositary of public funds under the laws of congress and regulations of the treasury department is not merely a bailee of the government, and bound only to ordinary care in keeping the public moneys: he stands in the relation of a debtor to the government to the full amount of public funds received by him, and this indebtedness can only be discharged by actually paying over the money on orders from the proper authority. The obligations which such an official assumes by the express terms and conditions of his bond are those of an insurer of the safe keeping of the moneys intrusted to his care until they shall have been paid over as required by law, and the sureties on his official bond become sponsors for the discharge of all these obligations assumed by their principal: 13 Wall. 17, 56. How, then, is it possible for such a vacancy in the office to occur as will discharge the sureties from liability prior to the actual paying over of all the moneys received on proper orders? Will murder and robbery under the circumstances alleged discharge an indebtedness or an unconditional contract of insurance against all casualties? Clearly not.

The application of this rule of law to receivers and depositaries of public funds may at first sight seem harsh and unjust. But when we reflect that any rule less rigid and arbitrary would afford the greatest temptation to pretended robberies and consequent defalcations, we can not but be convinced of its justness in principle, as well as of its necessity on grounds of public policy.

All the remaining questions presented in the bill of exceptions relate to matters of practice resting in the sound discretion of the court below, and therefore are not subject to review on appeal to this court.

Judgment affirmed.