Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 Were a receiver of public moneys, who has given bond for the faithful performance of his duties as required by law, a mere ordinary bailee, it might be that he would be relieved by proof that the money had been destroyed by fire, or stolen from him, or taken by irresistible force. He would
 
 *22
 
 then be bound only to the exercise of ordinary care, even though a bailee for hire. The contract of bailment implies no more except in the case of common carriers, and the duty of a receiver,
 
 virtute officii,
 
 is to bring to the discharge of his trust that- prudence, caution, and attention which careful men usually bring to the conduct of their own affairs. He is to pay over the money in his hands as required by law, but he.is not an insurer. He may, however, make himself an insurer by express contract, and this he does when he binds himself in a penal bond to perform the duties of his office without exception. There is an established difference between a duty created merely by law and one to'which is added the obligation of an express undertaking. The law does not compel to impossibilities, but it is a settled rule that if performance of an express engagement becomes impossible by reason of anything occurring after the contract was made, though unforeseen by the contracting party, and not within his control, he will not be excused.
 
 *
 
 The rule has been applied rigidly to bonds of public officers intrusted with the care of public money. Such bonds have almost invariably been construed as binding the obligors to pay the money in their hands when required by law, even though the money may have been lost without fault on their part. It is true that in the case of the
 
 Supervisors of Albany
 
 v.
 
 Dorr et
 
 al.,
 
 †
 
 in the Supreme Court of New York, it was decided in a suit on a bond of a county treasurer, conditioned for the payment of all money that should come into his bands as treasurer, that he was not responsible for the public money feloniously stolen from his office without any negligence, want of due care, or other blame or fault whatever on his part; and this decision was affirmed in the Court of Appeals of that State, only, however, by an equal division.
 
 ‡
 
 It was rested upon the supposed liability of the officer,
 
 virtute officii,
 
 which it was thought his bond did not increase, and it was supposed to bo sustained by
 
 Lane
 
 v.
 
 Cotton,
 

 §
 

 and
 
 Whitfield
 
 v.
 
 *23
 

 Le De Spencer.
 

 *
 

 It is quite plain, however, that those cases do not sustain it. They were actions upon the case against the Postmaster-General, brought not by the government, but by private individuals to recover damages for the negligent failure to deliver letters, and the defendants were held not liable for money stolen, even by their subordinates in office. At most the Postmaster-General was a mere bailee, and no question was raised respecting the effect of a bond to secure the performance of his duties. But, whatever may have been the ruling in the case of the
 
 Supervisors of Albany
 
 v. Dorr, it is no longer authority, even in the State of New York.
 
 Muzzy, Supervisor,
 
 v.
 
 Shattuck et al.,
 

 †
 

 subsequently decided, and affirmed unanimously in the Court of Appeals, is utterly irreconcilable with it, and it has settled the law otherwise in that State. So in Pennsylvania, in
 
 Commonwealth
 
 v.
 
 Comly,
 

 ‡
 

 it was ruled that the responsibility of a public receiver depends on his contract, when there is one, and not on the law of bailments. There the condition of the bond was to account and pay over, and it was held no defence by the surety of the receiver that the money was stolen, though it was kept as a prudent man would keep his own funds. It was said by Chief Justice Gibson, in delivering the judgment of the court, after referring to the fact, that a lessee is not relieved from payment of rent by destruction of the demised premises by fire, “A loss by a visitatiou of Providence, which no vigilance could prevent, would present a more meritorious claim for relief, one would think, than a loss by robbery, which is always preceded by a greater or less degree
 
 of
 
 negligence. A receiver, or his surety, would come before a chancellor with an ill grace on that ground, even if there was a power to relieve him. The - keepers of the public moneys, or their sponsors, are to be held strictly to the contract, for if they were to be let off" on shallow pretences, delinquencies, which are fearfully frequent already, would be incessant. A chancellor is not bound to control the legal effect of a contract in any case;
 
 *24
 
 and his discretion, were he at liberty to use it., would be influenced by considerations of general policy.”
 
 State
 
 v. Harper
 
 *
 
 is to the same effect. This is precisely the ground which this court has taken. In
 
 The United States
 
 v. Prescott
 
 †
 
 it was decided that the felonious taking, stealing, and carrying away the public money in the hands of a receiver of public money, without any fault or negligence on his part, does not discharge him or his sureties, and that it cannot be set up as a defence to an action on his official bond. The condition of the receiver’s bond in that case, it is true, was that the receiver should pay promptly when orders for payment should be received, while the bond in the case before us is conditioned that Boyden, the receiver, had truly executed and discharged, and should continue truly and faithfully to execute and discharge all the duties of said office according to law. But the acts of Congress respecting receivers made it their duty to pay the public money received by them when ordered by the Treasury Department, and that department, by its general orders of 1854, required payment to be made before this suit was brought. No exception was made, no contingency was contemplated. The bond, therefore, was an absolute obligation to pay the money, and differing not at all, in legal effect, from the bond in Prescott’s case. A similar ruling was made in
 
 United States
 
 v.
 
 Dashiel.
 

 ‡
 

 What the condition of the bond on which suit was brought in that case was, does not appear in the report, but it was for the discharge of the paymaster’s official duty. The doctrine of Prescott’s case was also recognized in
 
 United States
 
 v.
 
 Keehler,
 

 §
 

 and it must be considered as settled law. Applying it to the case now in band, it makes it clear that the evidence offered by the defendants, tending to prove that the receiver had been robbed of the public money received by him, was rightly rejected as constituting no defeuce to the suit on the receiver’s bond. It is true that in Prescott’s case the defence set up was that the money had been
 
 *25
 
 stolen, while the defence set up here is robbery. But that can make no difference, unless it be .held that the receiver is a mere bailee. If, as we have seen, his liability is to be measured by his bond, and that binds him to pay the money, then the cause which renders it impossible for him to pay is of no importance, for he has assumed the risk of it.
 

 There is nothing in the second error assigned. Though under the acts of Congress of August 6th, 1846,
 
 *
 
 and the amendatory act of March 3d, 1857,
 
 †
 
 receivers are required to pay when inquired by the Secretary of the Treasury, there were general orders made for all receivers, requiring payments to be made at stated times, which were in existence when this receiver’s bond was given. The declaration avers a request, and this is enough after verdict.
 

 Judgment affirmed.
 

 [See
 
 infra,
 
 p. 56, Bevans, Receiver,
 
 v.
 
 United States.]
 

 *
 

 Metcalf on Contracts, 213; The Harriman, 9 “Wallace, 161.
 

 †
 

 25 Wendell, 440.
 

 ‡
 

 7 Hill, 583.
 

 §
 

 1 Lord Raymond, 646.
 

 *
 

 Gowper, 754.
 

 †
 

 1 Deni o, 238.
 

 ‡
 

 3 Pennsylvania State, 372.
 

 *
 

 6 Ohio State, 607.
 

 †
 

 3 Howard, 678.
 

 ‡
 

 4
 
 Wallace, 182.
 

 §
 

 9 Id. 83.
 

 *
 

 9 Stat. at Large, 59, § 6.
 

 †
 

 11 Id. 249.