Mr. Justice STRONG
delivered the opinion of the court.
It is to be observed that the defence attempted in this case, was not a denial of the receiver’s obligation to pay all the public money in his hands to the United States, according to the condition of his bond and the requirements of the acts of Congress, nor was it an assertion of performance of his obligation, but it was setting up an excuse for nonperformance. Was the receiver then in a condition to avail himself of the excuse which he presented? It may be a grave question whether the forcible taking of money belonging to the United States from the possession of one of her *61 officers, or agents lawfully holding it, by a government of paramount force, which at the time was usurping the authority of the rightful government, and compelling obedience to itself exclusively throughout a State, would not work a discharge of such officers of agents, if they were entirely free from fault, though they had given bond to pay the money to the United States. This question has been thoroughly argued, but we do not propose now to consider it, for its decision is not necessary to the case. The bond of a receiver of public money is given to insure the performance of all his duties, and those duties are defined by the acts of Congress and by Treasury Regulations made under the acts. [The learned justice here quoted the acts of Congress and the Treasury Regulations, in the language already given on page 58, setting out the duties of receivers of public moneys, to the performance of which they are bound by their official bonds, and continued:] In view of the fact that the duties of this receiver, to the performance of which he was bound by his bond, were thus prescribed, it' is plain that it was not in consequence of the Arkansas ordinances and acts of assembly, or in consequence of any action of the usurping government alone, that the money in the receiver’s hands was not paid to the United States. Hence the evidence offered by the defendants came short of meeting the case, for it was the default of the receiver that exposed the money to seizure by the usurping power which for a time excluded the authority of the government. The condition of the bond was broken long before the ordinance of secession was passed. It was the duty of Bevans to pay over the money in his hands, in large part, more than a year before any obstacle came in the way of his payment. Had he performed his duty, all of it would have been paid into the treasury by the 1st of April, 1861. He was, therefore, a defaulter when the alleged seizure was made, and it was his default which concurred with the acts of the public enemy, and contributed to, or facilitated, the wrong which was perpetrated, or, at least., rendered it possible. Since then his bond had become absolute by his failure to perform its conditions, *62 and since the evidence offered tended to show at most an excuse for non-performance after May 6th, 1861, it is manifest that it presented an insufficient defence to the action. Seeking relief, which in its nature was equitable, as the receiver did, it was incumbent upon him to come with clean hands, and to place the obligees in the bond in as good a situation as they would have held had he made no default.
It is not to be overlooked that Bevans was not an ordinary bailee of the government. Bailee he was undoubtedly, but by his bond he had insured the safe-keeping and prompt payment of the public money which came to his hands. His obligation was, therefore, not less stringent than that of a common carrier, and in some respects it was greater. In United States v. Prescott,* it was said by this court:' “ Public policy requires that every depositary of public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open the door for frauds which might be practiced with impunity.” These observations apply in full force to the present case. It cannot be allowed that a depositary of public money, who has not only assumed the common obligations of a bailee, but has given bond to keep safely the money in his hands, and to pay it over promptly, as required by law, may, by making a default, throw upon the government the risk of loss of the money by tlie intervention of a public enemy. We are, therefore, of opinion that the evidence offered by the defendants in the court below tended to show no sufficient defence to the claim of the plaintiffs, and that it was properly rejected.
The objection that the jury was instructed .to find for the plaintiffs the amount claimed by the papers given in evidence (viz., the official settlements), with interest thereon, is entirely without merit. There was no evidence to impeach the accounts stated, or to show set-off, release, or payment. *63 The instruction was, therefore, in accordance with the legal effect of the evidetjce, and there were no disputed facts upon which the jury could pass.
Judgment affirmed.

 3 Howard, 588