### UNITED STATES v. BOSBYSHELL.

#### (District Court, E. D. Pennsylvania. March 25, 1896.)

**1. OFFICIAL BONDS—SUPERINTENDENT OF MINT.**

The bond of a superintendent of a mint was conditioned that he should faithfully discharge "the duties of said office according to the laws of the United States." Rev. St. § 3506, requires the superintendent to receive and "safely keep" all moneys and bullion, etc., until legally withdrawn. *Held*, that the obligation of safe-keeping implied a further obligation to deliver to his successor, and that the obligors were consequently liable for a shortage found to exist in the amount of bullion and coin receipted for by him on assuming charge of the mint, upon opening vaults from which no money or bullion had been taken for the use of the mint during his incumbency.

**2. SAME—ADMISSIBILITY OF EVIDENCE — CERTIFICATES OF ACCOUNTS FROM TREASURY DEPARTMENT.**

An action on the official bond of the superintendent of a mint, which proceeds on his alleged failure to safely keep money and bullion intrusted to his care, is not a suit founded on the "delinquency of a revenue officer, or other person accountable for public money," within the meaning of Rev. St. § 886, providing for the use of certified transcripts from the treasury department as evidence in such suits; and such a transcript is therefore inadmissible.

This was an action brought by the United States upon the official bond of Oliver C. Bosbyshell, as superintendent of the mint at Philadelphia, from December 19, 1889, to March 31, 1894. At the trial there was a verdict for the United States, and the defendant has now moved for a new trial.

The condition of the bond sued on was in the following language:

"Now, the condition of the foregoing obligation is such, that whereas the president of the United States hath, pursuant to law, appointed the said Oliver C. Bosbyshell superintendent of the mint of the United States at Philadelphia, Penna., and in due form of law caused to be issued to him as such a commission bearing date the 19th day of December, Anno Domini one thousand eight hundred and eighty-nine: Now, therefore, if the said Oliver C. Bosbyshell shall faithfully and diligently perform, execute and discharge, all and singular, the duties of said office according to the laws of the United States, then this obligation to be void and of no effect; otherwise to be and remain in full force and virtue."

Among the duties of superintendents of mints are the following:

"The superintendent of such mint shall receive and safely keep, until legally withdrawn, all moneys or bullion which shall be for the use or expenses of the mint. He shall receive all bullion brought to the mint for assay or coinage; shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other officers," etc. Rev. St. § 3506.

Upon assuming the position of superintendent of the mint the defendant relieved the Hon. Daniel M. Fox, and in receipting to

Mr. Fox for the coin and bullion in his possession defendant gave him a receipt for gold bullion to the amount of $16,200,000, and for silver to the amount of 33,000,000 of dollars in bags. The gold bullion in bars was at the time locked and sealed in a compartment within the working vault used by the deposit weight clerk. The silver was stored in a locked and sealed vault in the post-office building. The receipt was given without counting or weighing, being based upon the certificates attached to the compartment and vault. It appeared that the gold bullion had been placed in the vault in 1887, and had not been counted or weighed since that time, the yearly examination being confined to an inspection of the seals of the compartment, which were found intact. The same course was pursued at the annual settlements in June, 1890, 1891, 1892, and 1893. In September, 1893, there being a demand for gold bars, the vault was opened and a count was had, which disclosed a shortage of $100,000. The defendant was relieved from the possession and control of the mint, and thereafter the amount of silver was ascertained by weighing, defendant not being present, though represented by another. The weighing disclosed a shortage of $768.

At the trial there was admitted in evidence, over defendant's objection, a certified transcript from the treasury department, containing copies of statements and certificates of settlement of defendant's accounts.

In respect to the gold bullion, one of the defenses at the trial was that the amount receipted for was not in fact in the vault at the time defendant assumed control of the mint. In regard to the alleged shortage of silver it was claimed that the apparent difference was merely the result of inaccuracy in the weighing, and of deterioration in the bags. The general nature and effect of the evidence bearing on these points will appear from the following extract from the court's instructions to the jury:

"This suit is brought upon the bond of Mr. Bosbyshell and his sureties, given to the United States when he entered upon his duties as superintendent of the mint at Philadelphia. The breach alleged is a failure to account to the government for the full amount of gold bullion received by Mr. Bosbyshell as such superintendent. The amount so received is stated in his receipt to be $16,200,000. The amount turned over to the government upon his retiring from office was $16,100,000, showing a deficiency of $100,000, all of which has been made up to the government but $12,810.82, which the government claims to recover, with interest. This deficiency is shown as well by the testimony of Mr. Bosbyshell himself as by the certificate of settlement of his account by the treasury department of the government, and by other evidence in the case. It is not necessary to consider whether he might be relieved from the charge by proving that he did not receive the amount acknowledged by his written receipt, inasmuch as there is no evidence to show that he did not receive this amount. The bullion was kept in an inclosure, as described, but it does not appear that a part of it could not have been abstracted while thus inclosed, and in his charge; and there is nothing to prove that it was not so abstracted. On the contrary, it is clear that it could have in part been removed, and there is evidence before you to justify a belief that it was removed. The testimony respecting the inclosure of the bullion, and its condition when the cage or inclosure was opened, is therefore entirely insufficient to justify a conclusion of Mr. Bosbyshell received less than his receipt specifies and his repeated reports to the government state. It was his right and his duty to himself, if not to the government, to ascertain the amount before receipting for

it, and to know that his subsequent reports of the amount were correct. If he chose to accept the statements of others and assume responsibility for the quantity stated, he must bear the consequences. If the amount which was turned over to him was less than the amount he should have received from his predecessor, the government could have held his predecessor and his sureties responsible for the difference. If it was less than the amount that should have been turned over, the written statements in his receipt and subsequent reports tended to mislead the government, if the statements were incorrect, and to deprive it of its remedy against others. But it is sufficient for the purposes of this case that there is no evidence to justify a conclusion that the amount turned over to him was less than the amount stated in his receipt. To the extent of the deficiency claimed on account of the gold bullion the government is therefore entitled to recover. As respects the deficiency claimed by the plaintiff on account of the silver dollars received, the evidence presents a different case. It is not suggested that Mr. Bosbyshell did not receive the amount he acknowledged by his receipt, but it is alleged that the evidence does not show that there was such a deficiency in the amount turned over when he went out of office, as the government claims. The amount so turned over was taken out of his possession before being counted, or an ascertainment of quantity by weighing was made. How the ascertainment was made has been described. It was hurried, and somewhat careless, in the judgment of the court; and, although Mr. Bosbyshell had a representative present, neither he nor his representative had any control over the method pursued. A subsequent ascertainment discovered a difference in the amount to the extent of $35. You must judge from the evidence whether it is reasonable to believe that a greater credit than the $35 should be allowed. In view of the circumstances that this property—the silver dollars—for which Mr. Bosbyshell and his sureties were responsible to the government was taken out of his charge before the amount was ascertained, the burden is upon the government to make it plain to you that there was a deficiency. They chose to take it away from him, and make the count in his absence, and the duty is upon the government to make it plain to you that there was a deficiency; that he did not turn over the whole amount which he was obliged to turn over. According to the count or ascertainment made in the manner described, there appears to have been a deficiency of between $600 and $700. Now, it is for you to judge how much or how little of an error in each weighing or counting of these bags would have been necessary to result in such a discrepancy."

On the present motion, the following points were urged in argument:

(1) Under the terms of the bond, defendant was not liable for the shortage. He was liable only for ordinary care as bailee, and not as an insurer.

(2) The certified transcript of settlement from the treasury department was not evidence. A settlement of a money account makes section 886 of the Revised Statutes applicable.

Ellery P. Ingham and Harvey K. Newitt, for the United States.

F. Carroll Brewster, F. Merian Allen, and R. C. Dale, for defendant.

BUTLER, District Judge. The point urged that under the terms of the bond the obligors were responsible only for the superintendent's care and fidelity, and that the doctrine enforced in Boyden v. U. S., 13 Wall. 17; U. S. v. Prescott, 3 How. 578; U. S. v. Morgan, 11 How. 154 and other like cases, is inapplicable, was not made on the trial, though the requests for instruction to the jury embrace it.

Unless it is clear that the point is well taken, the verdict should not be interfered with on this account, but the question be allowed

to go to the court of appeals. I cannot see any good reason for the distinction sought to be drawn between this case and those cited above. The bond binds the obligors for the "safe-keeping" of the property, and its delivery when required. The obligation to deliver is a plain and necessary implication from the language used. This obligation would not be plainer or more imperative if expressed in words. The officer is to "safely keep" the property for the government during his incumbency of the office, and to deliver it up at the expiration of that time. But if the obligation of the bond was confined to the "safe-keeping" of the property only, it would be as clearly broken as if the obligation were held to include a delivery to the government when the superintendent retires. The pith of the decisions cited is that obligors in official bonds will be held strictly to their undertakings—substantially as insurers.

In Boyden v. U. S. the terms of the bond are substantially indentical with those of the bond before us.

U. S. v. Thomas, 15 Wall. 337, presented a different case. The officer was forcibly deprived of the property involved by a public enemy; and the court held that where the performance is rendered impossible by the act of God, or public enemies, he and his bondsmen are not responsible.

The only other reason urged in support of the rule which need be noticed, relates to the admission of the certificate from the treasury department. This I think is sound. The limitations of section 886, Rev. St., were overlooked. The section, so far as respects the certification of accounts, is confined to suits founded on the "delinquency of a revenue officer, or other person accountable for public money." This suit is not so founded. It rests on an alleged failure of the superintendent of the mint to keep safely certain property intrusted to his care. The language does not embrace the suit; and it cannot be extended so as to cover it, by construction. The learned district attorney concedes that the certificate is not admissible if the suit is not founded on a delinquency respecting "public money," but contends that it is so founded. We cannot sustain the contention. The claim, as before stated, is for loss resulting from failure to keep the property intrusted to the care of the superintendent.

The rule for a new trial is made absolute.