## BOSBYSHELL v. UNITED STATES.

### DREXEL et al. v. SAME.

(Circuit Court of Appeals, Third Circuit. December 16, 1896.)

### Nos. 18 and 19.

1. SUPERINTENDENT OF MINT—LOSS OF BULLION—BONDSMEN.
    The obligation of a superintendent of a mint and of his bondsmen, under Rev. St. § 3506, and a bond conditioned upon his faithfully and diligently discharging all the duties of his office according to law, is to keep safely, until legally withdrawn, all bullion for the use of the mint; and such superintendent and his bondsmen are responsible for the loss of bullion which he has received, and which he cannot produce, though it has been lost or stolen without any negligence or fault on his part. 73 Fed. 616, affirmed.

2. SAME—ASSUMPTION OF OFFICE—RECEIPT FOR BULLION.
    When the superintendent of a mint, on assuming office, has receipted for a certain quantity of bullion, the same is thereafter in his custody, though it was not actually counted or weighed by him, but was locked and sealed up in a cage in the mint, under the certificate as to its amount of a mint inspector by whom it had previously been weighed and counted, upon the faith of which certificate the superintendent receipted for it, and though one of the keys of such cage, without which it could not be opened, is deposited in the bureau of the mints, at Washington, and the other is not actually delivered to the superintendent by his predecessor.

3. SAME—FAILURE TO WEIGH AND COUNT—NEGLECT OF DIRECTOR OF MINT.
    A failure by the director of the mint to observe a rule prescribing that he shall, at the annual settlement, require the weighing and counting of all bullion in the mint, does not relieve a superintendent of a mint of his responsibility for bullion in his custody.

4. SAME—EVIDENCE—RECEIPTS AND ADMISSIONS.
    A receipt given by a superintendent of a mint for a certain quantity of bullion, and his admissions in reports and accounts that he holds it, are at least prima facie evidence that it came into his possession; and, in an action against him to recover the value of bullion which he cannot produce, evidence which shows only that it might have been removed before he assumed office is not sufficient to require submission to the jury of the question whether he ever really received it.

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

H. Merian Allen, Richard C. Dale, and F. Carroll Brewster, for plaintiffs in error.

James M. Beck, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

ACHESON, Circuit Judge. These two cases are actions brought by the United States upon the official bond given by Oliver C. Bosbyshell as superintendent of the United States mint in Philadelphia; one of the actions being against Mr. Bosbyshell as principal, and the other against the executors of the estate of George W. Childs, who was surety on the bond. As the cases were tried together, and the record in each is the same, they will be considered together. See 73 Fed. 616. The government sued to recover $12,810.82, being the value of certain gold bullion alleged to have been committed to the custody of Mr. Bosbyshell as superintendent of the mint, and for which, it was charged, he had failed to account. The condition of the bond is this:

"Now, therefore, if the said Oliver C. Bosbyshell shall faithfully and diligently perform, execute, and discharge, all and singular, the duties of said office, according to the laws of the United States, then this obligation to be void and of no effect."

Section 3506 of the Revised Statutes of the United States provides:

"The superintendent of each mint shall receive and safely keep, until legally withdrawn, all moneys or bullion which shall be for the use or the expenses of the mint. He shall receive all bullion, brought to the mint for assay or coinage; shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other officers. * * *"

Mr. Bosbyshell was superintendent of the mint in Philadelphia from November 1, 1889, to March 31, 1894. The evidence disclosed that in the year 1881 or 1882 there was brought from the assay office in New York to the Philadelphia mint a large lot of gold bullion, which for several years thereafter was weighed at each annual settlement. At the annual accounting which took place on July 1, 1887, during the incumbency of Supt. Fox, the predecessor in office of Mr. Bosbyshell, this bullion was put in a compartment in one of the vaults in the Philadelphia mint, and a wire cage placed around it. Before this was done the bullion was weighed, and the number of bars counted, in the presence of Robert E. Preston, then a mint examiner. A certificate of the number of bars, their weight and value, was signed by Mr. Preston, and by him affixed to the cage. The door of the cage was fastened by two locks, and it was also sealed by Mr. Fox and by Mr. Preston. Mr. Fox, the superintendent of the mint, took possession of the key of one of the locks, and the key of the other lock was deposited by Mr. Preston in the bureau of the mint, at Washington. The cage could not be properly opened without the employment of both keys. Mr. Preston testified that this gold bullion was thus placed in the cage to avoid the trouble of weighing it every year, and to await an order for its coining. On assuming the office of superintendent of the mint, on November 1,

77 F.—60

1889, Mr. Bosbyshell gave a written receipt for this bullion to Mr. Fox, the retiring superintendent, the amount so receipted for being the same stated in Mr. Preston's certificate affixed to the cage. Mr. Bosbyshell has here testified that, when he entered upon his official duties and gave that receipt, he knew he had the right to have this bullion counted and weighed. He waived the right, however, and the cage was not then opened. Mr. Bosbyshell seems thus to have acted on the faith of Mr. Preston's certificate. Subsequently to the giving of this receipt, and down until September, 1893, in his monthly reports and quarterly accounts rendered to the bureau of the mint, Mr. Bosbyshell reported this bullion as in his custody, and charged himself therewith. This cage remained unopened until September, 1893, when, under orders from the treasury department that this bullion be turned over to the melter for the purpose of coining, the cage was opened. When the door was opened and the bullion was counted, it was found that 30 bars were missing. Of these missing bars, 20 were subsequently found in the ventilator of the vault, outside of the cage. In the course of his charge to the jury the district judge made the following observations, which it gives us satisfaction here to reproduce:

"It is not suggested that Mr. Bosbyshell, a gentleman of the highest character, abstracted this gold. It never has been suggested or suspected but that it was done by one of his subordinates, for whose conduct in this respect he is responsible, to the extent of making good what the government has lost,—a subordinate who is now languishing in jail as a punishment for his offense."

The learned judge gave binding instructions to the jury to return a verdict in favor of the government for the amount claimed, which was done in each case.

On behalf of the plaintiffs in error, it is contended, first, that the bullion in question was not in the custody of the superintendent of the mint. This position, however, we think, is untenable. It will be noted that section 3506 of the Revised Statutes prescribes that "the superintendent of each mint shall receive and safely keep, until legally withdrawn, all moneys or bullion which shall be for the use or the expenses of the mint." Undoubtedly, this particular lot of bullion was for the use of the mint. Of this the evidence is conclusive. Again, section 3506 declares that the superintendent "shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other officers." The fact that the bullion in question was placed and remained in a locked and sealed cage in one of the vaults of the mint, under the circumstances detailed by the witnesses, did not take it out of the custody of the superintendent of the mint, or relieve him of his statutory duty and responsibility with respect to it. It may here be remarked that, at the time the bullion was placed in the cage, Mr. Preston was merely a mint examiner. We add, however, that while this bullion remained in the mint it was not within the lawful authority of even the chief officer of the bureau of the mint, the director of the mint, to relieve the superintendent of his legal custody of the bullion, and his responsibility for its safe keeping. The receipt which Mr. Bosbyshell gave to his predecessor in office, and his subsequent reports to and ac-

counts with the bureau of the mint, show very clearly that he well understood that he was the custodian of this bullion, and accountable therefor. If it be true that the key to the lock of the cage which Mr. Fox held was not turned over by him to Mr. Bosbyshell, the circumstance is immaterial here; and certainly it does not tend to the exoneration of Mr. Bosbyshell, whose right and duty it was to demand and receive that key.

The defendants, in their sixth point, asked the court to charge as follows:

"If the jury believe that the director of the mint should have had the gold bullion weighed and counted at each of the annual settlements from 1887 to 1893, and neglected to do so, the verdict should be for the defendants."

This point is based upon one of the regulations of the bureau of the mint, which prescribes that:

"At the close of the annual settlement, and at any other time the director may require, there shall be a full and accurate count and weighing of the moneys and bullion in the possession of the superintendents of the mints, * * * for the purpose of ascertaining whether the officer in charge has in his possession the amount of public moneys with which he stands charged by the treasury department."

The court refused to affirm the above point, and instructed the jury that:

"The director's neglect of duty, if he had any such duty as the point contemplates, would not relieve the superintendent from his responsibility under the statute before alluded to."

This instruction was entirely right. No omission of duty by the director of the mint could absolve the superintendent of the mint from the obligation imposed upon him by the express terms of the statute under which he held his office.

It is further urged that the case of the government was not established by such evidence as to justify the court in giving binding instructions against the defendants upon the facts, and that the question whether the ten bars of bullion were abstracted during the official term of Mr. Bosbyshell should have been submitted to the jury. Now, the government produced the written receipt for the bullion given by Mr. Bosbyshell, when he entered upon his official duties, to Mr. Fox, the retiring superintendent, and his subsequent written acknowledgments contained in the numerous reports and accounts rendered by him to the bureau of the mint. All these papers were of an official character, and were executed in the regular course of business. They were therefore competent evidence, as against the sureties in the bond. The receipt was none the less competent evidence against the sureties because Mr. Bosbyshell had seen fit voluntarily to waive a recounting and reweighing of this bullion. It may be that the defendants were not concluded by Mr. Bosbyshell's receipt and the other documents. Undoubtedly, however, the prima facie liability of Mr. Bosbyshell to account to the government for the bullion was thereby established. How did the defendants meet this clear prima facie case? Not by evidence that when Mr. Bosbyshell receipted for the bullion the amount then on

deposit in the cage was actually less than as stated in the receipt. No mistake in the receipt was proved, nor was any offer made to show such mistake. It was not shown that the bullion was taken from the cage during Mr. Fox's term of office. Under the evidence, the most that can be said is that the bullion might have been abstracted from the cage during Mr. Fox's term. It appeared, indeed, that when the bullion was placed in the inclosure, in 1887, a space was left at the bottom of the cage sufficiently large for the abstraction of a bar, and that later, during Mr. Fox's term, a board was screwed down in front of this space so as to close it. This circumstance, it is insisted, was sufficient to carry the case to the jury, and to justify a finding that Mr. Bosbyshell received less bullion than his written receipt specified. But in this we cannot concur. The board may have made the abstraction of bars from the cage more difficult, but certainly it did not make it impossible. To have permitted the jury to find that the bars were taken during Mr. Fox's term of office would have been to overturn Mr. Bosbyshell's receipt and official reports upon a mere conjecture. After the most attentive consideration of the record, we are entirely satisfied that there was no evidence to support a finding that the amount of bullion turned over by Mr. Fox to Mr. Bosbyshell was any less than as stated in the latter's receipt, and in his subsequent written official acknowledgments.

We come now to the defense raised by the defendants' seventh point, wherein the court was asked to charge that if the jury found from the evidence that the bullion sued for was "stolen without any fault of the defendant [Bosbyshell], without defendant's knowledge, and not by his neglect, and not by any lack of prudence or caution on his part," the defendants are not responsible on the bond in suit. The court refused to give this instruction to the jury. The position taken by the defendants at the trial below, and maintained here, is that the bond in suit imposed upon the defendants a liability only for the faithful and diligent performance by Mr. Bosbyshell of the duties of the office of superintendent, and not a liability for a felonious taking of bullion without any fault or negligence on his part. We are not able, however, to give our assent to this proposition, in view of the decisions of the supreme court, especially in the cases of U. S. v. Prescott, 3 How. 578; U. S. v. Dashiel, 4 Wall. 182; and Boyden v. U. S., 13 Wall. 17. In the first of these cases it was ruled that, to an action upon the official bond of a receiver of public moneys, it was no defense that the public moneys sued for were stolen without any fault or negligence on his part. The court there said:

"This is not a case of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant Prescott arises out of his official bond, and principles which are founded upon public policy."

It is insisted, however, that the case in hand is distinguishable from the above-cited cases, by reason of a difference in the terms of the condition of the bonds. Here the condition is:

"If the said Oliver C. Bosbyshell shall faithfully and diligently perform, execute, and discharge, all and singular, the duties of said office according to the laws of the United States, then this obligation to be void and of no effect."

It is conceded that section 3506 of the Revised Statutes, defining the duties of the superintendent of the mint, must be read into the bond; and, as we have already seen, that section enacts that "the superintendent of each mint shall receive and safely keep until legally withdrawn" all bullion which shall be for the use of the mint, and "shall be the keeper of all bullion or coin in the mint, except while the same is legally in the hands of other officers." But it is contended that the language of the statute simply declares the common-law duty of a bailee to keep in a safe manner, and that the absence of an express contract to deliver relieves the defendants from the stringent rule of responsibility enforced in the cited cases. We think, however, that the words of the statute, "safely keep until legally withdrawn," clearly import an obligation to deliver to the government, or according to its orders, and that such a liability must be read into the condition of the bond. But even if the condition of the bond, to "safely keep," is to be understood in the strictest sense of the language used. still, upon the principle of the adjudged cases referred to, the obligors would be answerable for a loss by larceny, although without fault or negligence on the part of the official, because the obligation to keep safely is without any qualification or exception. The case of U. S. v. Thomas, 15 Wall. 337, does not, we think, help the plaintiffs in error; for the only point there determined was that the forcible seizure of public property by the public enemy, without fault or neglect of the officer in charge, excused compliance with the condition of his official bond. That case, it seems to us, does not weaken the authority of the previous decisions of the supreme court upon the particular question now before us. We deem those decisions to be controlling here.

We are of the opinion that no sufficient reason appears for sustaining any of the assignments of error, and accordingly the judgment in each of the cases is affirmed.