UNITED STATES v. SMYTHE et al.

(Circuit Court, E. D. Louisiana. April 20, 1900.)

No. 12,329.

1. BONDS OF UNITED STATES OFFICERS—LIABILITY FOR PUBLIC MONEYS.

The bond of an officer of the United States, charged with the receiving and safe-keeping, until legally withdrawn, of public moneys, creates an absolute liability in general for any of such moneys not accounted for, from which the officer and his sureties can only be relieved where the loss is shown to have occurred by an act of God or of a public enemy, and without fault on the part of the officer.

2. SAME—SUPERINTENDENT OF MINT—NEGLIGENCE OF SUBORDINATE.

The superintendent of a mint is liable to the United States, on his bond, for currency officially received by him as public moneys, and which by the statute he was required to "safely keep until legally withdrawn," but which was destroyed by fire in a vault through the negligence of a subordinate in leaving it upon a box containing inflammable materials.

8. SAME—ACTION ON BOND—DEFENSES.

In an action on the bond of a superintendent of a mint to recover for his failure to account for and pay over public moneys received, it is not a defense that such moneys consisted of treasury notes, and that they were accidentally burned, and the ashes and remnants were turned over to the United States, and therefore the government suffered no damage, since the defendant's obligation, secured by his bond, was not to indemnify the government against damage, but to "receive and safely keep, until legally withdrawn, all moneys. * * *" Rev. St. § 3506 [U. S. Comp. St. 1901, p. 2341]. Having violated such obligation, the defendant cannot be permitted to raise the question whether the United States was damnified thereby.

4. SAME.

Nor is the defendant in such action entitled to credit for such of the charred remnants of notes as were identified by the government expert; no claim therefor having been presented to and disallowed by the accounting officers of the treasury, as required by Rev. St. § 951 [U. S. Comp. St. 1901, p. 695], before it could be pleaded as a set-off.

Action on Bond of Defendant as Superintendent of the Mint at New Orleans. On direction of verdict for plaintiff.

For same case on appeal, see 107 Fed. 376.

PARLANGE, District Judge. The condition of Dr. Smythe's bond as superintendent of the United States mint at New Orleans is that

he "shall faithfully and diligently perform, execute and discharge, all and singular, the duties of said office according to the laws of the United States." Rev. St. U. S. § 3506 [U. S. Comp. St. 1901, p. 2341], provides "that the superintendent of each mint shall receive and safely keep until legally withdrawn all moneys or bullion which shall be for the use or the expenses of the mint." It may be well to also have in mind Rev. St. § 3501 [U. S. Comp. St. 1901, p. 2339], providing that superintendents of mints shall give bond, with one or more sureties, "for the faithful and diligent performance of the duties" of their office; also providing that "similar bonds may be required of the assistants or clerks, in such sums as the superintendent shall determine, with the approbation of the director of the mint; but the same shall not be construed to relieve the superintendent or other officers from liability to the United States for acts, omissions or negligence of their subordinates or employés." Rev. St. § 3500 [U. S. Comp. St. 1901, p. 2339], provides that "the superintendent of each mint shall have the control thereof, the superintendence of the officers and persons employed therein and the supervision of the business thereof, subject to the approval of the director of the mint." Rev. St. § 3504 [U. S. Comp. St. 1901, p. 2340], provides for certain accounts to be rendered and certain statements to be made by the superintendent, and for the appointment by him of assistants, clerks, and workmen.

It is perfectly clear that the federal courts have uniformly held that, on such a bond as Dr. Smythe's, the officer is virtually an insurer, and cannot be relieved, even against an unavoidable loss, except only when the loss occurs by an act of God or of the public enemy, and without any neglect or fault on the part of the officer. Of course, in the present cause, the loss was not unavoidable. Nay, more, it would seem to have been caused by the fault of persons for whom Dr. Smythe was responsible. But even if in this cause the loss had been shown to have resulted from an accidental or unavoidable cause (no act of God or of the public enemy being involved), Dr. Smythe would still be liable, under the clear and uniformly concordant decisions of the federal courts. The motives of high public policy which require that custodians of the public moneys be held to a strict accountability are well stated by Mr. Justice McLean in U. S. v. Prescott, 3 How. 578, 11 L. Ed. 734, and by Mr. Justice Strong in Bevans v. U. S., 13 Wall. 62, 20 L. Ed. 531. So stringent is this accountability that the supreme court, in U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89, seems to have experienced difficulty in relieving a custodian of public moneys from whom they had been taken by the Confederate forces without fault or neglect on his part. Three of the justices dissented, and Mr. Justice Miller, who was one of them, called attention to the fact that congress had, recognizing the former decisions of the supreme court on the subject, enacted a law to provide, in certain cases of great hardship, for the relief of custodians of public moneys who lose them without fault or neglect on their part. See Rev. St. § 1062 [U. S. Comp. St. 1901, p. 737]. Notice, also, act of May 9, 1888 (25 Stat. 135 [U. S. Comp. St. 1901, p. 2616]), allowing the postmaster general

to investigate certain losses by postmasters, occurring without fault on the part of the postmasters. Such statutes negative, of course, the idea (but the matter is absolutely clear without them) that in the absence of such statutes the officers could be relieved. Not long prior to the Thomas Case, the supreme court had held, in Bevans v. U. S., 13 Wall. 56, 20 L. Ed. 531, that an officer from whom the Confederate forces had forcibly taken public moneys would not be relieved, because he was at fault; the fault being that, by not promptly paying over the moneys, he had exposed them to the seizure. See U. S. v. Dashiel, 4 Wall. 182, 18 L. Ed. 319; U. S. v. Prescott, 3 How. 578, 11 L. Ed. 734; Boyden v. U. S., 13 Wall. 17, 20 L. Ed. 527, in which loss by fire is mentioned; U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89; U. S. v. Freeman, 1 Woodb. & M. 45, Fed. Cas. No. 15,163; U. S. v. Keehler, 9 Wall. 83, 19 L. Ed. 574; Bosbyshell v. U. S., 23 C. C. A. 581, 77 Fed. 944, affirming U. S. v. Bosbyshell (D. C.) 73 Fed. 616; 2 Am. & Eng. Enc. Law (1st Ed.) verbo "Bonds," pp. 446l, 446m, and notes; Id., p. 467b; 4 Am. & Eng. Enc. Law (2d Ed.) verbo "Bonds," p. 695, and notes; Id., pp. 679, 680, and 681.

The warehouseman is held only to the exercise of due care. He is in no manner an insurer, and, if the goods intrusted to him are lost, he is relieved, provided the exercise of due care on his part is shown. 28 Am. & Eng. Enc. of Law (1st Ed.) verbo "Warehouseman," p. 642. After the evidence in the cause was closed, there was absolutely nothing for the jury, unless the liability of Dr. Smythe was to be held to be merely that of a warehouseman. Of course, the court could not take such a view of the law without disregarding totally all the federal adjudications on the subject. Even if Dr. Smythe had been a mere warehouseman, it is doubtful, to say the least, whether a trial court would have been justified, under the evidence in this cause, in allowing a verdict in favor of the defendants to stand. The government furnished a new and improved fireproof steel vault to Dr. Smythe, with a smaller vault on the inside; and yet his subordinates, without reason or justification, placed within the larger vault a box containing inflammable material, and then laid the currency on that box. Would even a warehouseman be excused under such circumstances?

The court was urged to charge the jury that if they found that the $25,000 were contained in the bank box, in the form of United States treasury notes, and that all said moneys were destroyed by fire, and that the remnants and débris of the moneys were turned over to the government, then the government suffered no damages by the destruction of its own obligations, etc. This requested charge ignored the elementary distinction between obligations to indemnify and obligations to do specific things. As against the latter obligations, the plea, "Non est damnificatus," does not avail. It is, of course, beyond all question that the bond sued on was an obligation to perform certain duties,—to do certain things. It does not admit of doubt that it was the duty of Dr. Smythe to safely keep, and deliver to the government, or to his successor, the $25,000 in dispute. That his bond was not merely an obligation to pay the moneys, but

to safely keep and deliver them as received, results plainly from the authorities above cited. Specially notice the language of Mr. Justice Bradley in U. S. v. Thomas, supra; Bosbyshell v. U. S. (C. C. A.) supra; 4 Am. & Eng. Enc. Law (2d Ed.) verbo "Bonds," pp. 694 and 695, and notes; also Id. p. 681, and notes; 2 Am. & Eng. Enc. Law (1st Ed.) verbo "Bonds," pp. 466*l* and 466m, and notes, and p. 467b; 3 Enc. Pl. & Prac. verbo "Bonds," p. 663. Notice Johnson v. Risk, 137 U. S. 308, 11 Sup. Ct. 111, 34 L. Ed. 683; Mills v. Dow's Adm'r, 133 U. S. 431, 10 Sup. Ct. 413, 33 L. Ed. 717; Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752; U. S. v. Gleason, 175 U. S. 588, 20 Sup. Ct. 233, 44 L. Ed. 284 (Jan. 8, 1900). Specially notice the language of Mr. Justice Swayne in Wicker v. Hoppock, 6 Wall., on page 99, 18 L. Ed. 752.

Surely, an obligation to safely keep $25,000 of the public moneys, which obligation clearly implies a safe delivery of them, cannot be satisfied by the turning over to the government of a box full of ashes claimed to be the remnants of the moneys; and, if it were the law that such an issue must be submitted to a jury, an easy way might be contrived to escape the strict accountability to which all the federal decisions hold custodians of public moneys.

As Mr. Justice McLean said in U. S. v. Prescott, supra:

"Public policy requires that every depository of public moneys should be held to a strict accountability—not only that he should exercise the highest degree of vigilance, but that 'he should safely keep' the moneys which came to his hands. Any relaxation of this condition would open a door to frauds which might be practiced with impunity. A depository would have nothing more to do than to lay his plans and arrange his proofs so as to establish his loss without laches on his part."

So, as to the contention here made, if a custodian of public moneys may, in lieu of the moneys, produce ashes, and assert that the moneys were United States treasury notes, and were burnt, and this should be a legal defense, then, in practice, it would almost always prevail, because, in the nature of the matter, it would in nearly all cases be impossible for the government to overcome the testimony of the officer. In this cause, Dr. Smythe is estopped from raising the question whether the United States are damnified when United States treasury notes are destroyed by fire. To hold him, it is sufficient to say that he has violated the obligation of his bond to safely keep and deliver those notes, which were unquestionably "moneys" of the United States. The futility of the contention on this point was exposed when Dr. Smythe's counsel were driven, in argument, to admit that, under their view of the matter, no civil responsibility whatever would attach to any one for the destruction of United States treasury notes by an officer charged by law with their safe custody and delivery.

The court was urged to charge the jury to give credit for the $1,182 which the government expert testified was the aggregate of all the moneys burned. Defendants were no more entitled to a credit for these $1,182 than they were entitled to a credit of $25,000 if the jury had been allowed to find, and had found, that $25,000 were burned.

It may be that if the defendants pay the judgment, and thereupon obtain the ashes from the government, they may redeem the $1,182, as any other person could do under similar circumstances. Or it

120 F.—3

may be that they could have relief through the court of claims. Rev. St. § 1062 [U. S. Comp. St. 1901, p. 737]. But with those questions this court has no concern.

If the loss occurred through any wrongdoing or negligence on the part of any of Dr. Smythe's subordinates, then it would be nothing but plain, ordinary justice that Dr. Smythe and his bondsmen should make the loss good. If the loss occurred from an accidental fire, then Dr. Smythe and his bondsmen are held to have known the law at the time Dr. Smythe accepted the office of superintendent of the mint. No one is compelled to accept an office, and one accepting an office takes it cum onere. Dr. Smythe and his bondsmen are held to have known that, under the uniform decisions of the federal courts, a loss of the moneys by an accidental fire would fall upon them, and not upon the government, and that therefore the government need not insure against fire. Dr. Smythe could easily have protected himself against the wrongdoing of his subordinates by requiring bonds of them, and against fire by insuring. As to the cost of insuring, it was for him to decide, before accepting the office, whether the emoluments or salary of the office warranted him in taking insurance, if he wanted protection by insurance.

It may be of interest to notice Rev. St. U. S. § 951 [U. S. Comp. St. 1901, p. 695], as to requirements in pleading credits or set-offs against the government. Also, on this point, see U. S. v. Thomas, 15 Wall. 346, 21 L. Ed. 89; 2 Am. & Eng. Enc. Law (1st Ed.) verbo "Bonds," p. 466p. Of course, in this cause there was no claim or proof that any claim for credit or set-off was ever presented to the proper department and rejected.

In this cause there has been no charge or intimation that Dr. Smythe was personally at fault or blamable in any way. Such fault or negligence as may have been shown in the cause is attributable to his subordinates, and in no manner to him.