## Purdy v. Massey et al.

*Walter L. Sheppard*, for plaintiff; *C. Brewster Rhoads*, for defendant.

KUN, J., May 4, 1931.—The plaintiff, Elizabeth Purdy, owned a plot of ground in the City of Philadelphia, which she agreed to sell to the defendant Massey for $85,000, of which the sum of $25,000 was to be paid to her in cash at settlement, and she agreed to take back a purchase-money mortgage for the balance of $60,000. Inasmuch as Massey intended building a public garage on the site, it became necessary for him to raise money to finance his project, and plaintiff agreed that if Massey would furnish her with a completion bond of a reliable insurance company that the garage would be built and completed on the premises in accordance with certain plans and specifications, she would subordinate her purchase-money mortgage of $60,000 to a first mortgage of $80,000 created to finance the project. This arrangement was effected. Plaintiff went away from the settlement having as security for the payment of the balance of her purchase money, instead of a purchase-money mortgage of $60,000 a second mortgage of $60,000, subject to a first mortgage of $80,000, and having also the bond of completion of the defendant Indemnity Insurance Company of North America.

The garage was never built. A bill in equity was filed in another court by neighbors seeking to restrain the erection of the building to be used for a

public garage. The erection of the building was not restrained, but its use as a public garage was. The plaintiff duly notified the bonding company of the failure of the principal in the bond to build the building, but it did nothing. Foreclosure proceedings were instituted on the first mortgage, and as the balance of plaintiff's money was threatened, the bonding company was again called upon to perform its obligation. It did nothing. The plaintiff's mortgage of $60,000 was wiped out by the sale on the first mortgage of $80,000. The plaintiff no longer had her property or her mortgage, but she had the indemnity company's bond of completion for $60,000. On that she filed this suit.

This case has been before the court several times. It is most desirable to put an end to the litigation. Following the first trial in which a verdict was directed for the defendants on technical grounds, a new trial was ordered, in an opinion by our brother Taulane, in which it was pointed out that the bond in this case was a bond of guaranty as distinguished from a mere bond of indemnity, and plaintiff might be entitled to recover the principal sum in the bond as liquidated damages, or at least an amount equal to what would have been the cost necessary to complete the undertaking according to the plans and specifications.

It was well said in Equitable Trust Co. v. National Surety Co., 214 Pa. 159, 160: "The citation of authorities wherein bonds have been construed is of little value to a court in determining . . . [this sort of a] question unless the covenants of the bonds in the cases cited are the same in import and effect as those of the one under consideration." It might be added that the circumstances of the transaction and the purpose for which the obligation was given, so far as it can be gathered from competent proofs, are not to be disregarded in passing on the question.

The bond here, after reciting, inter alia, that the principal, the defendant Massey, had entered into a contract to erect a one-story modern fireproof garage on the premises in question in accordance with certain drawings and specifications, and that the said principal had delivered to the Home Life Insurance Company (the first mortgagee, to whose mortgage the plaintiff had agreed to subordinate hers), as obligee, a certain surety bond in the penal sum of $80,000, guaranteeing the completion of the aforesaid building free and clear of liens, provided:

"Now, therefore, the condition of the above obligation [the bond of $60,000 in suit given by the defendants to plaintiff] is such, that if the above bounden principal, or the surety on the bond to the Home Life Insurance Company shall well and truly keep, do and perform each and every, all and singular, the matters and things in said building agreement set forth and specified to be by the said principal kept, done and performed at the time and in the manner in said contract specified, and shall complete the building mentioned free and clear of mechanics' liens or claims, then this obligation shall be void; otherwise to be and remain in full force and effect."

We are well satisfied, as we were before, that the bond of the Indemnity Insurance Company of North America given to the plaintiff, Elizabeth Purdy, in this case is a bond of guaranty and not a mere bond of indemnity against loss. The bond is an affirmative covenant for the doing of a specific thing, that is, the erection of the garage in question in accordance with the plans and specifications, and not a bond of indemnity merely against loss or damage by reason of the nonperformance of that undertaking.

There is some confusion in the cases of other jurisdictions about the measure of damages to which obligees in both classes of these bonds are entitled, and

in a very late case, on which counsel for the defendants places great reliance, Trainor Co. *v.* Ætna Casualty and Surety Co., 49 F. (2d) 769, the court expressed the opinion that there is no substantial difference in the measure of damages in these classes of bonds, holding that on a guaranty bond the obligee must show loss or else be limited to nominal damages, while on an indemnity bond, if he fails to show loss, he is out of court altogether. We do not understand that to be the law in Pennsylvania, so far as a guaranty bond is concerned. It has been stated quite to the contrary.

In Wheeler *v.* Equitable Trust Co., 206 Pa. 428, plaintiff, as here, was a mortgagee who held the bond of the defendant and made an offer to prove the cost necessary to complete the buildings according to the plans and specifications. The court held that whether the proof was admissible depended entirely on the question of whether the undertaking of the surety company was a bond of guaranty, that is, a covenant for a specific thing, or whether it was one of mere indemnity against damage by reason of the nonperformance of the thing specified. The language of the court is as follows (page 431): "Whether this testimony was relevant depends on a proper construction of the policy. Was it an indemnity against loss or damage, by a failure of the mortgage as security? Or was it a guarantee for completion of the buildings as specified . . . ? If the latter, the testimony was relevant." The court held in that case that the contract was one of indemnity and not one of guaranty, but went on to say (page 432): "If the contract were one of guarantee, then the plaintiff, though she may have lost nothing on her collateral, instead may have largely profited by the sale of it, would have a right to recover; on the other hand if the contract were one of indemnity alone, she could not recover unless she proved a loss on the mortgage." Of course, in the case before us, the plaintiff lost her collateral entirely, but, as we read our cases, that is not the real basis of recovery in the case of a bond of guaranty as distinguished from a bond of indemnity against loss or damage or failure of the security.

The same subject came up before the Supreme Court in Equitable Trust Co. *v.* National Surety Co., *supra*, even more pointedly because in that case one part of the bond was held to be a mere indemnity and another part of the same bond, in effect the same as the one in the instant case, was held to be a guaranty, and under the latter portion of it recovery was allowed for failure to do the work. The court again referred to the distinction between a contract of indemnity and one of guaranty pointed out in Weightman *v.* Union Trust Co., 208 Pa. 449, wherein the court said: "The distinction between the two agreements is simply that between an affirmative covenant for a specific thing, and one of indemnity against damage by reason of the nonperformance of the thing specified." Under the portion of the bond which was held to be a guaranty, an absolute undertaking to complete the work, the plaintiff was permitted to recover the cost of doing it, regardless of proof of any loss suffered. It is to be noted that in both cases the suits were by mortgagees, so that we cannot follow the distinction made in other jurisdictions between rights of owners and rights of mortgagees where the bonds are in the same terms. It seems that it is the nature of the obligation of the obligor and not the status of the obligee which determines the liability.

The bond given to Elizabeth Purdy, the plaintiff, was not to keep and save her harmless and indemnify her against loss, as was the first portion of the bond in the case just cited, but was to do and perform the contract of the principal and complete the building in accordance with certain plans and specifications, as was undertaken in the second portion of the bond in the cited case

and which was held to be a contract of guaranty on the breach of which the obligee could recover without proof of damage. So we hold in this case. Our cases seem to follow the clear exposition of the doctrine found in Re Negus, 7 Wend. (N. Y.) 499: "Whether an action lies or not depends upon the true intent and meaning of the covenant; if it is simply to indemnify, and nothing more, then damage must be shown before the plaintiff can recover; but if there is an affirmative covenant to do a certain act or pay certain sums of money, then it is no defense in such an action to say that the plaintiff has not been damnified. . . . Where indemnity alone is expressed, it has always been held that damage must be sustained before a recovery can be had; but where there is a positive agreement to do the act which is to prevent damage to the plaintiff, then action lies, if the defendant neglects or refuses to do such act."

The distinction was again pointed out in Faulkner v. McHenry, 235 Pa. 298, though a case of a different nature, involving an implied indemnity. The court said (at page 300) : "Any apparent want of harmony in the decisions as to the right of a party indemnified to recover without proof of loss by the payment of the debt or otherwise, disappears when the nature of the undertaking is considered and the distinction between an obligation to do a specified thing and one of indemnity against loss resulting from non-performance is observed. Where the indemnity is against liability there is a right of recovery as soon as a liability is incurred; where it is against loss by reason of a liability there is no right of recovery until a loss occurs," citing Stephens v. Pennsylvania Casualty Co., 3 Ann. Cas. 478, note. The court continues by referring to the Wheeler, Weightman and Equitable Trust Company cases, supra, quoting from the Weightman case and adding its own statement (at page 301) : "In the cases in which a recovery has been had without proof of loss or damage, there was a general indemnity, an indemnity against claims or a covenant to do a particular thing."

Now the defendant bonding company could have written a bond to plaintiff to secure her against loss by reason of the failure of her subordinated mortgage as security. Had she accepted such a bond, she would have been obliged to prove a loss on her security before she could recover anything from the company. In the circumstances, however, that is not the kind of bond the plaintiff wanted. There was $60,000 due her as the balance of the purchase price of land she was selling to Massey. Ordinarily, she would have a purchase-money mortgage for it, and if it were unpaid she would get her land back by foreclosure if enough were not bid to pay her mortgage. Ordinarily, also, the purchaser, after erecting any improvements on the land, would refinance the operation and out of new mortgage funds pay off plaintiff's purchase-money mortgage. The purchaser in this case was not in a position to do that, so the arrangement was made to have a first mortgage of $80,000 put in ahead of the plaintiff's purchase-money mortgage of $60,000 on condition that the plaintiff receive a direct affirmative covenant of the bonding company that the buildings in question would be built. In such a situation, it is no answer for the bonding company to say that even had the building been built it would have added nothing to the plaintiff's security because of certain restrictions as to its use, and, therefore, she suffered no loss.

The building could no doubt have been adapted to other useful purposes, or there may in time have been some modification of the restriction as to its use. However that may be, in a case such as this, where the obligee has subordinated her purchase-money mortgage to another on the faith of a direct bond of guaranty for the completion of a building on the premises and no building is built, the obligor is liable; perhaps for the amount of the bond as liquidated

damages (Union Trust Co. *v.* Citizens Trust Co., 185 Pa. 217), but certainly for so much as would have been the reasonable cost to erect and complete the building according to the plans and specifications referred to in the bond, not exceeding, of course, the amount of the bond. This was the measure of damages adopted by the court, and a verdict for the plaintiff was directed on that basis. The verdict was a fair conclusion of the conflicting testimony directed to the issue involved.

We have very carefully considered the persistent and able argument of counsel for the bonding company throughout this litigation that the effect of its undertaking, whatever its terms, was to indemnify the plaintiff against loss by reason of the failure of her mortgage as security, requiring specific proof of such loss to entitle her to recover, and the further argument that some of the cases in which recovery was allowed without proof of loss were those in which definite specific things were undertaken to be done, as the payment of so much money (Folz *v.* Tradesmen's Trust Co., 201 Pa. 583), or the return of specific property (United States *v.* Smythe, 120 Fed. 30), etc., and that the undertaking to complete a building operation is not such an agreement to do a specific thing as the term is used in that class of cases. We have been unable to see that distinction. Indeed, the Wheeler, the Union Trust Company and the Equitable Trust Company cases, *supra*, were all building cases, and the undertaking to complete a building was assumed in each one of them to be an agreement to do a specific or particular thing quite as much as the doing of any other kind of a specific thing. We are of the opinion that the case has been properly and justly determined.

The motion for new trial is refused. The motion for judgment *non obstante veredicto* is overruled and exception noted for the defendants.