which firm the said Lawrence and the said Mickle were partners, should pay all taxes assessed upon tobacco, snuff or cigars manufactured by the firm, the said bond should be void. A breach of the condition of the bond is then correctly stated, and the complaint then proceeds to aver the death of Charles Vandervoort, one of the obligors, and also the death of William E. Lawrence, another of the obligors; and that the defendant Hannah T. Lawrence was thereafter, and before the commencement of this action, duly appointed administratrix, with the will annexed, of the goods and chattels which were of the said William E. Lawrence, deceased, wherefore judgment is prayed against the defendants in the sum of $9,000.

To this complaint the defendant Hannah T. Lawrence demurs, and contends, first, that the plaintiff has, in this action, elected to treat the bond in suit as a joint obligation, and that, as such, it was discharged by the death of Lawrence. But, the complaint sets forth a several obligation on the part of the obligors. It cannot, therefore, be said that the plaintiff has elected to treat the liability as joint, and, if a several liability can be enforced against the defendants, in this action, the complaint is good. The Code of Procedure of the state of New York (section 120) provides, that persons severally liable upon the same obligation or instrument may, all or any of them, be included in the same action. This provision of the law of the state must be considered as the law for this court, (Sawin v. Kenny, 93 U. S. 289; see, also, Chemung Canal Bank v. Lowery, Id. 72); and by virtue thereof an action against all the obligors upon a bond like this can be maintained. By a further provision of the law of the state (2 Rev. St. 113, § 2), all actions upon contract may be maintained by and against executors, in all cases in which the same might have been maintained by or against their respective testators; and, by a still further provision of the same law (Id. § 3), administrators are accountable to others to whom the estate was holden or bound, in the same manner as executors. The liability of the defendant Lawrence, as administratrix, to be sued upon this bond, is determined by those provisions of law.

The remaining question is, whether an action will lie, in the courts of the United States, against several defendants, upon a several liability arising out of the same instrument, where the defendants are sued in different characters, and the judgment, although the same in amount, must be otherwise different, as here, where one of the defendants is sued as administratrix. This question, also, must be determined according to the law of the state, and, by the laws of the state, such an action is permitted. Churchill v. Trapp. 3 Abb. Prac. 306.

A further point has been suggested, not arising upon the face of the complaint, but which, as it has been discussed by counsel with ref-

erence to the terms of the bond, and the bond itself has been, by consent, submitted for consideration, may here be disposed of. The point is this, that the bond sued on is the obligation of the firm of A. H. Mickle & Sons, and no action upon a partnership liability can be maintained against the representative of a deceased partner, without first exhausting the remedy against the surviving partner. No doubt exists, that, if this bond be the bond of the firm, it is impossible to maintain the action without averring in the complaint that Mickle, the surviving partner, is insolvent, and that all remedies against him have been exhausted. But the bond is not the bond of a firm. No firm name is attached to it, only the names of several persons. The fact that some of those persons were members of a firm does not alter the nature of the obligation nor create a liability on the part of the firm. The recital of the bond is, "We, William E. Lawrence and George B. Mickle, composing the firm of A. H. Mickle & Sons, as principal, and Charles Vandervoort and William D. McGregor, as sureties, are held," &c.; and this recital is relied on as conclusive to show that the obligation is that of the firm of A. H. Mickle & Sons, but I do not think the recital can control. The bond is executed by four different persons, each of whom has attached his seal and each of whom acknowledged the execution thereof, as his act. Each of these persons, by executing this bond, assumed a personal obligation to the United States, which can be enforced against him personally, notwithstanding the fact that the bond was given in the interest of the firm and to secure taxes that the firm might become liable for.

The demurrer is, therefore, overruled, with leave to plead, on payment of costs.

---

## Case No. 15,575.

### UNITED STATES v. LAWRENCE.

[1 Cranch, C. C. 94.] [1]

Circuit Court, District of Columbia. Nov. Term, 1802.

SEAMEN—REVOLT—ASSAULT UPON MASTER.

Assault and battery by a seaman upon the master of a vessel, does not amount to a confinement of the commander, nor an attempt to excite a revolt within the act of congress.

Indictment [against William Lawrence] for assaulting and beating the master of the brig Neptune (G. Colman), at sea, and attempting to excite a revolt. See the act of congress of April 30, 1790, c. 9, § 12 (1 Stat. 112).

Mr. Jones, for the defendant, moved the court to instruct the jury that proof of a mere assault and battery, committed at sea by a seaman upon his commander, does not amount to a confinement of the commander,

[1] [Reported by Hon. William Cranch, Chief Judge.]

nor to an attempt to excite a revolt, within the act of congress, which instruction was given by KILTY, Chief Judge, and CRANCH, Circuit Judge

MARSHALL, Circuit Judge, thinking the question did not apply to the case, refused to give an opinion.

---

## Case No. 15,576.

### UNITED STATES v. LAWRENCE.

[4 Cranch, C. C. 514.] [1]

Circuit Court, District of Columbia. March Term, 1835.

INSANITY — EXAMINATION OF WITNESSES BEFORE GRAND JURY—PRESUMPTIONS.

1. In a criminal case it is not necessary, on the part of the prosecution, to summon witnesses to the grand jury to prove the sanity of the accused, as every person is presumed to be of sound mind until the contrary is proved.

2. The accused has no right to send witnesses to the grand jury to prove merely exculpatory matter.

On Monday, the 30th of March, 1835, the grand jury handed to the court the following paper, namely:

"The grand jury beg leave to represent to the honorable court, that Doctors Causine, Bohrer, Sewall, and Clark, were directed to be summoned to testify in the case of Richard Lawrence (who attempted to shoot the president of the United States), to prove the sanity or insanity of the accused. The district attorney has told the jury that the examination of these witnesses, for that purpose, is improper. The jury, therefore, ask the opinion and instruction of the court upon this point. Thomas Carbery, Foreman. March 30, 1835."

THE COURT (THRUSTON, Circuit Judge, absent) took time, till this day, to consider the matter, when—

CRANCH, Chief Judge, delivered the opinion of the court, as follows:

The grand jury having represented to the court that several witnesses were directed to be summoned to testify in the case of Richard Lawrence, to prove the sanity or insanity of the accused, and that the district attorney had informed the grand jury that the examination of those witnesses, for that purpose, was improper; wherefore they asked the opinion and instruction of the court upon that point.

The court is of opinion, that every person is presumed, in law, to be of sound mind until the contrary is proved; and therefore it is unnecessary to summon witnesses on the part of the prosecution to prove the sanity of the accused; that every man is presumed to intend to do what he does; and is prima facie responsible for his actions, and for the probable and natural conse-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

quences of them; that if those actions are, in themselves, unlawful, the burden of proof is on the accused, to excuse or justify them; but the accused has no right to send witnesses to the grand jury to prove mere exculpatory matter; he must wait until he is put upon his trial; when the petit jury is the proper tribunal to hear and decide upon the matter of defence.

If the evidence, on the part of the prosecution, shows a full primâ facie case of guilt, we have never known a case in which the grand jury have been permitted to examine witnesses not required on the part of the prosecution, to prove mere matter of excuse or justification. Chitty (volume 1, p. 318) lays down the law thus: "The grand jury, in general, hear evidence only in support of the charge, and not in exculpation of the defendant; and it has been said that they ought never to hear any other than that which is produced for the crown. But it may be doubted whether, as they are sworn to present the truth, which necessarily requires investigation, in case they may not be able to elicit truth from the witnesses for the prosecution, and are actually convinced of that circumstance, they may not require other testimony to assist them in forming their decision. The true intention seems to be that, primâ facie, the grand jury have no concern with any testimony but that which is regularly offered to them, with the bill of indictment; on the back of which the names of the witnesses are inserted; their duty being merely to inquire whether there be sufficient ground for putting the accused party on his trial before another jury of a different description. But if they are unable to satisfy themselves of the truth sufficiently to warrant their determination, they may properly seek other information relative to mere facts; but further than this they cannot proceed."

And Chief Justice McKean, in Schaffer's Case, 1 Dall. [1 U. S.] 236, in answer to an application that witnesses might be sent to the grand jury in behalf of the accused, said to the grand jury: "Were the proposed examination of witnesses on the part of the defendant to be allowed, the long-established rules of law and justice would be at an end. It is a matter well known and well understood that by the laws of our country, every question which affects a man's life, reputation, or property must be tried by twelve of his peers; and that their unanimous verdict is, alone, competent to determine the fact in issue. If then you undertake to inquire, not only upon what foundation the charge is made, but, likewise, upon what foundation it is denied, you will, in effect, usurp the jurisdiction of the petit jury, you will supersede the legal authority of the court in judging of the competency and inadmissibility of witnesses, and having thus undertaken to try the question, that question may be determined upon a bare