35 U.S. 239 (____)
10 Pet. 239
*THE UNITED STATES, APPELLANTS,
v.
CHARLES F. SIBBALD, APPELLEE.
Supreme Court of United States.

*241 Mr. White, for the appellee.
The attorney-general, for the United States.
*245 Mr. Justice BALDWIN delivered the opinion of the court.
These are cross appeals from the decree of the judge of the superior court of East Florida, on the petition of Sibbald; praying for a confirmation of his claim to sixteen thousand acres of land, pursuant to the acts of congress for adjusting land claims in Florida.
The petition was in the form prescribed by law, presenting a case proper for the exercise of the jurisdiction of the court below. On *246 the 16th of July, 1816, the petitioner applied to the governor of East Florida, setting forth that he was desirous of erecting machinery for sawing timber on Little Trout creek, on the north side of the river St. John's and that of Nassau: "he asks permission for that purpose, with the corresponding surety of the grant of land of five miles square, or its equivalent, in the event that this situation will not permit the said form; which land will insure the continued supply of timber."
On the 2d of August, 1816, the governor decrees, "the permission solicited by this party is granted, without injury to third persons; under the express condition that until the establishment of the mill, the grant of the land, which will be a square of five miles, in order that he may use the timber, shall be of no effect," &c. Pursuant to this grant, a survey was made on the 2d of May, 1819, of ten thousand acres, at the place called for in the grant. In February, 1820, four thousand acres were surveyed in another place, called Turnbull's swamp, at the distance of thirty miles from the first survey; and afterwards, the residue, two thousand acres, was surveyed, *322] *at a place called Bow Legs Hammock, at the distance of twenty or thirty miles. In 1819, Sibbald commenced the erection of a saw-mill on the ten thousand acre tract, and continued it till its completion, except the dam; which would have been completed had not the negroes and horses employed been stolen; and while the millwright was absent in pursuit of them, the dam was carried away by a freshet. The work was then abandoned, after an expenditure of more than 5000 dollars. In September, 1827, another mill was built and in operation; which was destroyed by fire in July, 1828. Another was commenced in October, 1828, which went into operation in June, 1829, and so continues to the present time; is of seventy horse power, and calculated to saw twenty thousand feet of lumber a day.
By the decree of the court below, the claim of the petitioner was confirmed as to the ten thousand acre survey on Trout creek, and rejected as to the two remaining surveys of four thousand, and two thousand acres; from which decree both parties appealed. Various objections to the claim were made on the hearing, but only two were relied on here.
1. That the grant was on a condition precedent, which was not begun to be performed till the grant became forfeited by the order of the governor, made the 29th of October, 1818, declaring all grants made in consideration of mechanical improvements to be made, to be void if the condition were not performed in six months. It is unnecessary to decide on the effect of this order; or whether by the acts which authorize the courts of Missouri and Florida to decide on claims to land therein, congress intended to assert a right by forfeiture for condition broken, to lands which had been once legally granted. The evidence in this and the other cases which have been decided, is very full and clear, that no grant has ever been annulled or revoked by the Spanish authorities for any cause; and that there is no instance of a governor having granted land which had been before granted on *247 condition: and it may well be doubted, whether it would have been reannexed to the royal domain had the province remained under the dominion of the king of Spain: nor is there any provision of any law of congress, which specially requires the court to inquire into the performance of conditions on which grants were made.
By the eighth article of the treaty of cession by Spain to the United States, the same time is allowed to the owners of land so granted, to *fulfil the conditions of their grants after the date of the treaty, [*323 as was limited in the grants. We have heretofore decided, in the case of Arredondo, that as to individual rights, the treaty is to be considered as dated at its ratification; 6 Peters, 748, 749: the erection of a mill in 1819 or 1820 would, therefore, be in time to save a forfeiture. No time was limited in the grant; and no greater effect can be given to the governor's order fixing the time for the performance of conditions, than if the limitation had been contained in the grant. We have also decided, that this provision of the treaty is not confined to owners in possession of lands by occupancy or residence, but extends to all persons who have a legal seisin and possession of land in virtue of a grant; 6 Peters, 743: and that in the situation of the province and the claimants to land at the time of the cession, it was enough if they would show a performance of the condition cy pres. We are therefore of opinion that the petitioner began the erection of the mill in time to save the forfeiture; and that he has shown the performance of such acts as amount to a compliance with the condition, according to the rules of equity which govern these cases.
2. It is objected that the terms of the grant do not authorize a survey of any part of the sixteen thousand acres, in any other than in the place called for. The petition was for a grant of sixteen thousand acres, or its equivalent, if its situation would not admit of this form; the permission solicited was granted, which by reference makes the petition a part of the grant. It is in full proof that the quantity could not be surveyed at the place designated without interfering with land which had been previously granted; which would have been contrary to the express words of the grant, "without injury to third persons." It is also in proof, without contradiction, that in order to obtain the ten thousand acres on Trout creek, it was necessary to go round one or two different tracts, and that no more could have been obtained any where near it of any value; the shape of the survey is irregular, and not at all in conformity with the rules prescribed to surveyors; which require the surveys to be in rectangular parallelograms, the front of which on rivers, creeks and roads not to exceed one third of the depth. It was certainly the intention of the petitioner and the governor, that there should be a grant of five miles square, which was the usual quantity granted in consideration of the erection of mills: and we think that taking the petition and grant, together with the manifest intention of both parties, the equivalent for any deficiency on Trout creek may be referred to quantity *rather than to the form of the survey. It would be a very [*324 *248 rigid construction of the grant, to make the privilege of altering the shape of the survey, an equivalent for the loss of six thousand acres of land. That such was not the intention of the governor is evident from the evidence of Mr. Fernandez; who testifies, that on ascertaining that part of the land had been previously granted, he informed the governor, who gave Sibbald the right to locate his grant at any vacant place suitable for the erection of a saw-mill. The surveyor-general of the province testified, that he filled that office in East Florida from 1811 to 1821, that he located grants by surveying any land which was designated by the grantee, to which no objection was made by any of the authorities under the Spanish government; and which was considered an inherent privilege of the grantee without any order from the government. We are therefore of opinion, that the title of the petitioner to the whole quantity of land specified in the grant is valid by the law of nations, of Spain, the United States, and the stipulations of the treaty between Spain and the United States for the cession of the Floridas to the latter; and ought to be confirmed to him; according to the several surveys made as returned with the record. We do therefore order, adjudge and decree, that the decree of the court below, confirming the title of the petitioner to the ten thousand acres on Trout creek, be, and the same is hereby affirmed. And proceeding to render such decree as the court below ought to have rendered, this court doth further order, adjudge and decree, that the decree of the court below, rejecting the claim of the petitioners to the land embraced in the surveys of four thousand acres, and of two thousand acres, as returned with the record, be, and the same is hereby reversed and annulled. That the claim of the petitioner to the same be, and the same is hereby confirmed and declared valid; and that the surveyor of public lands in the eastern district of Florida be, and is hereby directed to do and cause to be done, all the acts and things enjoined on him by law in relation to the lands within said surveys.
This cause came on to be heard on the transcript of the record from the superior court for the district of East Florida, and was argued by counsel. On consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said superior court confirming the title of the petitioner to the ten thousand acres on *325] *Trout creek be, and the same is hereby affirmed; and that the residue of the decree of the said superior court be, and the same is hereby reversed and annulled. And this court, proceeding to render such decree as the said superior court ought to have rendered, doth order, adjudge and decree, that the claim of the petitioner to the land embraced in the surveys of four thousand acres and of two thousand acres, as returned with and contained in the record, is valid, and that the same be, and is hereby confirmed. And it is further ordered, adjudged and decreed by this court, that the surveyor of public lands in the eastern district of Florida be, and he is hereby directed to do, and cause to be done, all the acts and things enjoined on him by law *249 in relation to the lands within said survey. And that the said cause be, and the same is hereby remanded to the said superior court to cause further to be done therein, what of right and according to law and justice, and in conformity to the opinion and decree of this court, ought to be done.
The same decree was given in the case of Sibbald, appellant, v. The United States.