The facts are sufficiently stated in the opinion.
McCkaky, Circuit Judge.
The demurrer raises, for, the first time in a Federal Court, the important question whether any lapse of time will constitute a bar, or a sufficient defense, to a suit in equity, brought in the name of the United States.
This suit is brought to cancel and set aside certain' land patents executed by the United States, on the ground that the same were obtained by fraud. The patents attacked as fraudulent were issued about forty-three years before the filing of the bill, and many of the alleged matters of fact, concerning which it would be necessary to take proofs, in order to determine the question of fraud, transpired more than sixty years before the filing of the bill, as appears from its allegations. The claims of the Philbrook heirs, wdiich it is alleged were unlawfully and fraudulently set aside by the action of the Land Department, had their inception in November, 1815. The frauds alleged to have been perpetrated by C. W. Beebee and Chester Ashley consisted, as alleged, in inducing the Register of the Land Office to believe that the settlers on the land had consented to the issuance of the patents; and it appears that whatever they did to this end was done prior to October, 1838. Both the parties charged to have actually participated in the fraud are long since dead, and we may assume that most, if not all, ,the witnesses who could testify from personal knowledge concerning it are likewise dead. The city of Little Rock, now the capital of Arkansas, has been built upon the land, and hundreds of innocent purchasers have bought and paid for portions of it upon the faith of the patent of the United States. The land is covered with the homesteads of many hundreds of families. It has been thus occupied in many instances by the present holders and their predecessors, for more than a generation. A Court of equity cannot contemplate with any degree of favor the proposition that this land shall, at this late day, be declared a part of the public domain, or granted to claimants who have so long slept upon their rights. It must, how *500 ever, be conceded that, as a general rule, the United States is not bound by any statute of limitations, not imposed by Congress, nor chargeable with laches.
The following cases, cited by counsel for plaintiff, abundantly support this general doctrine: United States v. Kirkpatrick, 9 Wheaton, 720; Gibson v. Choteau, 13 Wallace, 92; Gansen v. United States, 97 U. S., 584; United States v. Thompson, 98 U. S., 486.
These are all, it is true, actions at common law, but the same doctrine must, no doubt, prevail in equity, where the statute of limitations is sought to be interposed, in analogy to a like limitation at law. Unless, therefore, this defense can be supported upon some principle of equity jurisprudence, separate and distinct from any State statute of limitations, and from any considerations based alone upon the laches of the public agents of the Government, it must fail, however disastrous to the rights of innocent parties, and however inequitable the consequences may be.
We are thus brought to the consideration of the question whether a lapse of time so great as to afford a clear presumption that all the witnesses to the transaction in controversy are dead, and all proof lost or destroyed, will of itself constitute a bar to a suit in equity, independently of any statute of limitations and without regard to any question of laches; or, in other words, should a Court of equity refuse to entertain a bill in equity upon the sole ground that the lapse of time has been so great as to make it impossible to ascertain the facts and apply the remedy, by reason of the death of the witnesses and the loss or destruction of proofs. In my judgment, the doctrine that a Court of equity will not entertain a claim so stale as to be not capable of satisfactory proof, must stand as one applicable alike to all suitors; it rests not upon any statute of limitations, nor upon any doctrine of laches alone, although the fact of laches may always appear; it rests rather upon the sound rule that no Court should ever entertain a controversy after the ravages of time have destroyed the evidence concerning it. A party called upon to answer to a charge of fraud committed by his ancestors, or those through or under whom he claims, more than forty years before the cortímencement of the suit, *501 need not plead the technical bar of the statute of limitations or the laches of the complainant; it is enough if he alleges that the claim is stale, and insists that by reason of the long delay in bringing suit the witnesses by whom he might have explained the transaction are dead. To compel him to submit his rights to adjudication under such circumstances would be abhorrent to the principles of equity, not because of any statutory bar or any laches merely, but because the great lapse of time is evidence against the complainant and in favor of the defendant, and because it is contrary to equity and góod conscience that any person should be brought into Court to answer for a fraud alleged to have been committed by others before he was born, and so long ago as to make it impossible for him to find living witnesses who have personal knowledge of the facts. Under such circumstances a Court of equity ought to presume that the persons who were cognizant of the facts could, if living, explain them so as to disprove the charge of fraud. It is well settled that possession of land for a long period of time will raise a presumption of a grant which will be enforced as against the Government. (Mayor v. Horner, Cowper, 102; Jackson v. McCall, 10 J. R., 380; Lewis v. San Antonio, 7 Texas, 304; 3 Starkie, 1221; 2d Wharton on Evidence, Sec. 1348; Rowe v. Ireland, 11 East, 230.) And if a grant is to be presumed by reason of the lapse of time, when there is no other evidence of a grant except that afforded by long possession, it would seem that, upon similar grounds, the validity of a grant which is shown to have been actually executed, and under which possession has been held for an equally long period of time, should be presumed. The authorities support the proposition that lapse of time may be a good defense in equity, independently of any statute of limitations, and they show that the doctrine rests not alone upon laches; it is often put upon one or all of the following grounds, namely:
First—That Courts,of equity,must, for the peace of society and upon grounds of public policy, discourage stale demands by refusing to entertain them.
Second—That lapse of time will, if long enough, be regarded as evidence against the stale claim equal to that of credible *502 witnesses, and which being disregarded, would in a majority of cases lead to unjust judgments.
Third—That after the witnesses who had personal knowledge of the facts have all passed away, it is impossible to ascertain the facts, and Courts of equity will on this ground refuse to undertake such a task.
Thus Mr. Justice Story says: “A defense peculiar to Courts of equity is founded on the mere lapse of time, and the staleness of the claim, in cases where no statute of limitations directly covers the case. In such cases, Courts of equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere when there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights.” (2d Story’s Equity, 1520). And in Maxwell v. Kennedy, 3 Howard, 221, the Supreme Court of the United States, in answer to the argument that there was no statute of limitations applicable to the case at bar, said: “We think the lapse of time, upon the facts stated in the bill and exhibits, is, upon principles of equity, a bar to the relief prayed, without reference to the direct bar of a statute of limitations.”
Again, in Clark v. Boorman, 13 Wallace, 509, the same Court said: “Every principle of justice and fair dealing, of the security of rights long recognized, of repose of society, and the intelligent administration of justice, forbids us to enter upon an inquiry into that transaction, forty years after it occurred, when all the parties interested had lived and died without complaining of it, upon the suggestion of a construction of a will different from that held by the parties concerned, and acquiesced in by them throughout all this time.”
In Brown v. County of Buena Vista, 95 United States, 161, the same doctrine is expressed in these words : “The lapse of time carries with -it the memory and life of witnesses, the muni-ments of evidence, and other means of proof. The rule which gives it the effect prescribed is necessary to the peace, repose and welfare of society. A departure from it would open an inlet to- the evils intended to be excluded.”
In Harwood v. Railroad Company, 17 Wallace, the doctrine is *503 concisely and clearly stated thus: “Without referring to any statute of limitations, the Courts have adopted the principle that the delay which will defeat a recovery must depend upon the particular circumstances of each case.”
In Badger v. Badger, 2d Wallace, 94, the Court said: “But there is a defense peculiar to Courts of equity, founded on lapse of time and the staleness of the claim, where no statute of limitations covers the case; in such cases Courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, and refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights.”
In Boone v. Childs, 10 Peters, 248, the rule is thus laid down: “A Court of chancery is said to act on its own rules in regard to stale demands, and independent of the statute; it will refuse to give relief where a party has long slept on his rights, and where the possession of the property claimed has been held in good faith, without disturbance, and has greatly increased in value.”
In Wilson v. Anthony, 19 Arkansas, cited with approval by the Supreme Court of the United States in Sullivan v. Railroad Company, 94 United States, 811, the doctrine is well stated thus: “The Chancellor refuses to interfere after an unreasonable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscured by time, and the evidence may be lost.”
And see Elmendorf v. Taylor, 10 Wheaton, 173; Hume v. Beale, 17 Wallace, 343; Hall v. Law, 102 United States, 465; Godden v. Kimmel, 99 U. S., 210.
Numerous other authorities might be cited to the same effect, but these are sufficient.
In view of these authorities and upon reason, I hold it to be a general principle of equity that lapse of time may constitute a sufficient defense, even in the absence of any statute of limitations, and without necessary reference to any question of laches.
Such being the law, it is clear that lapse of time may be a sufficient defense to a suit instituted in the name of the Government.
*504 It is well settled that when the United States becomes a party to a suit in the Courts and voluntarily submits its rights to judicial determination, it is bound by the same principles that govern individuals. When the United States voluntarily appears in a Court of justice, it at the same time voluntarily submits to the law and places itself upon an equality with other litigants. United States v. Fossatt, 21 Howard, 450; The Floyd Acceptances, 11 Wallace, 675; United States v. Barker, 12 Wheaton, 561.
In Mitchell v. United States, 9 Peters, 557, the Court said: “By common law the King has no right of entry on land which is not given to his subjects; the King is put to his inquest of office or information of intrusion in all cases where a subject is put to his action. Their right is the same, though the King has more convenient remedies in enforcing his. If the King has no original right of possession to land, he cannot acquire it without office found so as to annex it to his domain.” (And see United States v. State Bank, 96 U. S., 36; United States v. Bostwick, 94 U. S., 66). “The principles which govern inquiries as to the conduct of individuals in respect to their contracts are equally applicable where the United States are a party.” United States v. Smith, 94 U. S., 217.
In the case of The Siren, 7 Wallace, 159, the Court said: “But, although direct suits cannot be maintained against the United States or against their property, yet when the United States institute a suit they waive their exemption so far as to allow a presentation by the defendant of set-offs, legal and equitable, to the extent of the demand made or property claimed; and when they proceed in rem. they open to consideration all claims and equities in regard to the property libelled.” And in the same case it was said that the Government by its appearance in Court, “waives its exemptions and submits to the application of the same principles by which justice is administered between private suitors.”
See also Burbank v. Fay, 65 N. Y., 62; Osburne v. Bank, 9 Wheat., 870; United States v. McDonald, 7 Peters, 1; Brent v. Bank of Washington, 10 Peters, 615. In the latter case the Court declares that there is no reason why the United States should be exempted from a fundamental rule of equity subject *505 to which its Courts administer their remedy, and it is said: “Thus compelled to come into equity for a remedy to enforce a legal right, the United States must come as other suitors, seeking in the administration of the law of equity, relief,” <&c.
The same doctrine was laid down in strong language by Attorney General Black in Reside’s Case, 9 Opinion of the Attorney Generals, 204, and also in the case of The People v. Clark, 10 Barbour, 120. In the latter case, which was a bill instituted by the Attorney General of New York to cancel certain patents granted before the Revolution, the Court said: “If the questions in this case may be deemed to belong to a Court of equity, I cannot persuade myself that they are therefore never to be put at rest by lapse of time. It would be an alarming doctrine to hold that every man in the State who holds any land under a grant before the Revolution may be turned out of possession by the plaintiffs, if a King was cheated who, one or two hundred years since, made the grant.”
See also, upon this point, Mayor of Hull v. Horner, Cowper’s Reports, 110, decided by Lord Mansfield.
These considerations lead to the conclusions—
First—That the lapse of time constitutes a good defense to this suit upon the general principles of equity above stated, and which would be administered as between two citizens litigating in this tribunal; and—
Second—That the United States is bound by the same law. These conclusions render it unnecessary to consider the other important questions discussed by counsel.
The Court, however, deems it proper to say, in view of some remarks of the counsel for respondents, that, in its opinion, the official action of the Attorney General in directing that the bill be filed, cannot properly be made the subject of adverse criticism. The bill was filed upon the recommendation of the Secretary of the Interior, for the declared purpose of having the questions which were being pressed upon the attention of the Land Department in connection with the claims of the Philbrook heirs, determined by the judicial department of the Government., Those questions are important and unsettled. An appeal to the Courts was therefore entirely proper.
Cummings & Baker and Liberty Bartlett, for complainant.
U M. & G. B. Rose, Clark & Williams, J. M. Moore, for respondents.
The demurrer to the bill is sustained, and unless the complainant asks leave to amend, there will be a decree for respondents dismissing the bill.
Caldwell, District Judge, being interested, took no part in this case.