SMYTHE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

No. 950.

1. SUPERINTENDENT OF MINT—LOSS OF PUBLIC MONEYS—LIABILITIES ON BOND.
Whether the superintendent of a mint was at fault or not, he and his sureties are liable on his bond "for the faithful discharge of his duties" for the loss by fire of public moneys which the law required him to keep safely, and pay over when required.

2. SAME—ACTION FOR LOSS—RIGHT TO CREDIT.
In an action against the superintendent of a mint for a loss of public moneys, he is not entitled to a credit where the claim therefor was not shown "to have been presented to the accounting officers of the treasury, and to have been disallowed in whole or in part," etc., as required by Rev. St. § 951, as a condition precedent to its being admitted on the trial.

3. SAME—DEFENSE—PLEA OF NO DAMAGE.
No damage is not a good plea in defense to an action against a mint superintendent to recover on his official bond, conditioned "for the faithful discharge of his duties," for a loss by fire of moneys which his bond required him to keep safely, and pay over when required.

4. SAME—RECOVERY OF BOND—INTEREST.
On recovery on a mint superintendent's bond for a loss of public moneys which he was required to keep safely and turn over when required he should be charged with interest thereon from the date of their receipt until repayment, as provided by Rev. St. § 3624, in relation to all judgments obtained in suits to recover public moneys from persons accountable therefor, and who neglect or refuse to pay into the treasury the sum or balance due.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

John D. Rouse, Wm. Grant, W. W. Howe, W. B. Spencer, Chas. Cocke, and E. H. McCaleb, for plaintiffs in error.

F. B. Earhart, for defendant in error.

Before SHELBY, Circuit Judge, and NEWMAN and TOULMIN, District Judges.

TOULMIN, District Judge. This is a suit brought by the United States against Andrew W. Smythe and the sureties on his official bond, as superintendent of the United States mint at New Orleans, to recover $25,000, which it is alleged he received and failed to account for, as required by the condition of his bond. The defendants excepted to the petition on the ground that it did not state a cause of action. The exception was referred to the merits by order of the circuit court. Thereupon the defendants filed answers

*For opinion below, see 120 Fed. 30.

of a general denial of the allegations of the petition, and specially that the $25,000, the alleged deficiency of defendant Smythe sued for, was occasioned by a fire in no way attributable to said Superintendent Smythe or his employés, which occurred in the vault of the cashier of the mint, by which event the said sum, in the currency of the United States, was burned and destroyed; that the box containing the same was turned over to the agents and representatives of the plaintiffs for examination and investigation; and that because of the destruction of said currency by fire the defendants were in no way liable in this suit. Much evidence was offered pro and con upon the issues presented by the answers, but the evidence was without dispute that there was a deficiency of $25,000, as shown by defendant Smythe's account with the government, of the moneys received by him as superintendent of the mint. It also showed that the government, by its representative, took possession of the box referred to, and that its expert was able to identify $1,182 of charred currency therein, and that the same is still in possession of the government, and deposited in said mint. There was no exception to, or motion to strike out, the special defense set up in the defendants' answer, and there was no objection to the introduction of evidence in support of that defense. On the conclusion of the evidence the court, on motion of counsel for the plaintiffs, directed a verdict for the plaintiffs, and refused all charges requested by the defendants. Judgment having been given for the plaintiffs, the defendants bring the case here, and assign errors which raise the following points, to wit: (1) If the money representing the deficiency sued for was destroyed by fire, and such fire was not caused by the fault or negligence of defendant Smythe, the plaintiffs are not entitled to recover. (2) If the alleged deficiency of $25,000 was contained in a box in the vault of the mint, in the form of United States treasury notes, and all said money was destroyed by fire while so contained in said vault, and the remains and débris thereof were delivered by Smythe to the representative of the United States government who was authorized to receive it, a verdict for the plaintiffs cannot exceed nominal damages. (3) The defendants are entitled to credit for all the burnt or charred money identified and turned over to the United States government. (4) The defendants were only liable for interest upon the principal from the date of the demand for the same upon the sureties on Smythe's bond, to wit, from February 9, 1894, and not from April 1, 1893, the day the money was received by Smythe, as allowed by the judgment.

Since the case of U. S. v. Prescott, 3 How. 578, 11 L. Ed. 734,—the first case that came before the supreme court involving the question of liability of a receiver of public moneys,—down to the present time, the court has uniformly held, as a general proposition, that a bond of an officer charged with the receiving and safe-keeping of public moneys until they are legally withdrawn or paid out creates an absolute liability for the moneys that come to his hands. It has always regarded such officer as an insurer of the public money in his hands, and has held that he and his sureties cannot escape liability therefor, although it is stolen, or lost, or taken by robbery,

and without his fault. Where the condition of his bond is to account for and pay over money, or words to that effect, or the condition is to faithfully perform the duties of an office, and a statute describes the duties to similar effect, the officer has been held a virtual insurer of funds coming regularly into his hands, and therefore accountable for an unavoidable loss. In U. S. v. Prescott, supra, the suit was on the official bond of a receiver of public moneys. The defense was that the money had been stolen from the defendant without his fault or negligence. The court said:

"This is not a case of bailment, and, consequently, the law of bailment does not apply to it. The liability of defendant Prescott arises out of his official bond and principles which are founded on public policy."

There is no principle on which such a defense can be sustained. The obligation to keep safely the public money is absolute, without any condition, express or implied, and nothing but the payment of it when required can discharge the bond.

In U. S. v. Morgan, 11 How. 154, 13 L. Ed. 643, the suit was against a collector of customs on his bond for treasury notes received by him. The defense was that they had been lost or purloined without his knowledge or consent. The court held that this was no excuse, and that the defendant was liable for the notes on his bond, and not on any original bailment.

In U. S. v. Dashiel, 4 Wall. 182, 18 L. Ed. 319, a paymaster in the United States army was sued on his official bond "for the faithful discharge of his duties." His duty was to safely keep all public moneys in his charge, and pay them over when required to do so. The defense was that the money had been stolen from him. It was held that this did not exonerate him.

In U. S. v. Keehler, 9 Wall. 83, 19 L. Ed. 574, the court said "that in an action on an official bond the right of the government did not rest on the implied contract of bailment, but on the express contract found in the bond."

The case of Boyden v. U. S., 13 Wall. 17, 20 L. Ed. 527, was that of a receiver of public moneys, who was sued on his bond. The court said:

"Were a receiver of public moneys, who has given bond for the faithful performance of his duties as required by law, a mere ordinary bailee, it might be that he would be relieved by proof that the money had been destroyed by fire, or stolen from him, or taken by irresistible force. He would then be bound only to the exercise of ordinary care, even though a bailee for hire. The contract of bailment implies no more, except in the case of common carriers. He may, however, make himself an insurer by express contract, and this he does when he binds himself in a penal bond to perform the duties of his office without exception. There is an established difference between a duty created by law and one to which is added the obligation of an express undertaking. The law does not compel to impossibilities, but it is a settled rule that, if performance of an express engagement becomes impossible by reason of anything occurring after the contract was made, though unforeseen by the contracting parties, and not within his control, he will not be excused. The rule has been applied rigidly to bonds of public officers intrusted with the care of public moneys. Such bonds have almost invariably been construed as binding the obligors to pay the money in their hands when required by law, even though the money may have been lost without fault on their part."

The defense set up in the case was that the receiver had been robbed of the public money received by him.   The court said:

"If, as we have seen, his liability is to be measured by his bond, and that binds him to pay the money, then the cause which renders it impossible for him to pay is of no importance, for he has assumed the risk of it."

In Bevans v. U. S., 13 Wall. 56, 20 L. Ed. 531, the court said:

"It is not to be overlooked that Bevans was not an ordinary bailee of the government. Bailee he was undoubtedly, but by his bond he had insured the safe-keeping and prompt payment of the public money which came into his hands. His obligation was therefore not less stringent than that of a common carrier, and in some respects it was greater."

The learned counsel for the plaintiffs in error substantially concede in their argument that until the case of U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89, the supreme court had expressed views adverse to their position in this case, but contend that in the Thomas Case the court decided that the liability of a fiscal officer of the United States was that of a simple bailee, notwithstanding the conditions contained in a bond of the character of the one here involved.   We do not agree with this contention.   We find nothing in the Thomas Case overruling the former decisions of the court on the question involved in this suit.   Mr. Justice Bradley, speaking for the court, said:

"This precise question has not yet been decided by this court. As the Rebellion has been held to have been a public war, the question may be stated in a more general form, as follows: Is the act of a public enemy in forcibly seizing or destroying property of the government in the hands of a public officer, against his will and without his fault, a discharge of his obligation to keep such property safely, and of his official bond, given to secure the faithful performance of that duty, and to have the property forthcoming when required?"

—And decided that the seizing by a public enemy in a state of war of public moneys in the hands of a loyal government agent, against his will, and without his fault, was a sufficient discharge from the obligations of his official bond.   We do not find, as claimed by counsel, that the court held "that the liability of a fiscal officer of the United States was that of a simple bailee."   In the course of the opinion Mr. Justice Bradley said that such fiscal officers are nothing but bailees, and added:

"But they are special bailees, subject to special obligations. It is evident that the ordinary law of bailment cannot be invoked to determine the degree of their responsibility. This is placed on a new basis. To the extent of the amount of their official bonds, it is fixed by special contract; and the policy of the law as to their general responsibility for amounts not covered by such bonds may be fairly presumed to be the same."

Referring to some of the cases herein cited by us, he said:

"But in none of them was the defense of overruling necessity interposed. They were all cases of alleged theft, or robbery, or some other cause of loss, which would have been insufficient to exonerate a common carrier from liability. They all concur in establishing one point, however, of much importance,—that a bond with an unqualified condition to account for and pay over public moneys enlarges the implied obligation of the receiving officer, and deprives him of defenses which are available to an ordinary bailee."

In some of. the cases cited by us the court has, in effect, held that, while a receiver of public moneys is a bailee, he is not an ordinary bailee, and his obligations and liability do not depend on the law of bailments, but are measured by his bond. His liability is not unlike that of a common carrier, who is responsible for all losses except they be occasioned by the act of God or the public enemy. Our understanding of the language used in the Thomas Case is to the same effect.

Irrespective of the views hereinabove expressed as to the defendants' liability, we think the undisputed evidence showed such want of care on the part of the superintendent's cashier as to have justified the circuit court in directing a verdict for the plaintiffs. The official bond of the defendant Smythe was conditioned for the faithful discharge of his duties. Among those duties was the control of the mint under his official charge, and the safe-keeping, until legally withdrawn, of all moneys in his custody. Rev. St. §§ 3503. 3506. He is not relieved from liability to the United States for acts, omissions, or negligence of his subordinates or employés. Rev. St. § 3501. The duties prescribed by the statute are as much a part of the condition of his bond as if the same were written therein. 4 Am. & Eng. Enc. Law (2d Ed.) 681, and authorities cited in note 2. Under Rev. St. § 951, in suits like this "no claim for a credit shall be admitted upon trial, except such as appear to have been presented to the accounting officers of the treasury, and to have been disallowed in whole or in part," etc. In this case there was no proof that any claim for credit or set-off was ever presented to the proper officers and disallowed. U. S. v. Fletcher, 147 U. S. 664, 13 Sup. Ct. 434, 37 L. Ed. 322; Yates v. U. S., 32 C. C. A. 507, 90 Fed. 57. Besides, where a bond is not one to indemnify against damage, but an affirmative covenant to do specific things, non damnificatus, or no damage, is not a good plea. 3 Enc. Pl. & Prac. 663, and authorities in note 1. In suits on claims of this character, interest of 6 per centum per annum from the time of receiving the money until it shall be repaid is recoverable. Rev. St. § 3624. We find no error in the ruling of the circuit court, and its judgment is affirmed.

NEWMAN, District Judge. I concur in the judgment of the court in this case because I think under the evidence the circuit court was clearly justified in directing a verdict for the plaintiffs. The evidence not only failed to show proper care of the funds in the hands of the superintendent of the mint, but showed actual negligence on the part of the cashier, which negligence of his subordinate must be charged to the superintendent in this suit.

I do not believe that the liability of public officials on their bonds, for funds in their hands, is as strict and severe as my Brethren hold it to be, and, even if so strict a rule prevailed formerly, it was very much modified by the decision of the supreme court in the case of U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89, as I read that decision. While it is undoubtedly true that public policy requires quite a strict rule against the holders of public money, it does not, in my opinion, go to the extent announced in the opinion of the majority of the

court. But, on the facts in this case, the action of the circuit court in giving peremptory instructions for the plaintiffs was right, and the judgment, for that reason, should be affirmed.