POND et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1901.)

No. 620.

1. UNITED STATES—ACTION ON BOND OF OFFICER—DEFENSES BY SURETIES.

It is not a ground of defense by the sureties on the bond of a collector of internal revenue to an action for the recovery of the amount of defalcations of the collector that officers of the treasury department failed to notify the sureties of such defalcations until long after they acquired knowledge of them, and after the collector had become insolvent, both because Act Aug. 8, 1888 (25 Stat. 387), while making it the duty of the department to give such notice at once, expressly provides that a failure to do so shall not discharge the sureties, and for the further reason that under the general principles of law the government is not responsible to others for the laches or wrongful acts of its officers.

2. SAME—COLLECTOR OF INTERNAL REVENUE—LIABILITY ON OFFICIAL BOND.

A collector of internal revenue is liable on his bond for any failure to account for public money or property in his hands, from whatever cause, unless it be the act of God or the public enemy; and it is no defense to an action on his bond, expressly conditioned, in accordance with the statute, for the faithful performance of the duties of the office by him-

self and his deputies, that the money sued for was embezzled by a deputy without the collector's fault or negligence.

3. SAME—ACTION ON COLLECTOR'S BOND—EVIDENCE.
The admission in evidence against a collector of internal revenue and the sureties on his bond of a statement of his accounts made up by a deputy as acting collector under an appointment made after the collector's suspension, even if erroneous, was harmless error, where the correctness of such accounts was proved by independent testimony, which was uncontradicted.

4. SAME.
A judgment against a collector of internal revenue and the sureties on his bond, conditioned that he would faithfully execute and discharge all the duties of his office according to law, account for and pay over all moneys which might come into his hands, and be responsible for the acts of his deputies, is justified by evidence showing that he received certain stamps from the government, for which he failed to account; and the measure of recovery is the face value of such stamps, as charged to him in his account. Such an action is not one for the conversion of property, but one for a breach of official duty, and is governed by the terms and conditions of the bond and the statutes which prescribe such duty; and the government is not required to prove that the stamps unaccounted for were sold, and the money received therefor, even though such fact is unnecessarily alleged in the complaint.

5. SAME—EFFECT OF STATE STATUTES.
A state statute (Code Civ. Proc. Cal. § 1502) providing that on the death of a defendant in a pending action the plaintiff must present his claim to the executor or administrator for allowance or rejection, and that no recovery shall be had in the action without proof of such presentation, is not made applicable by the conformity act to an action by the United States in a federal court on the bond of an officer, since laches is not imputable to the government, nor can its rights in a governmental matter, prescribed by its own statutes, be affected by state enactments.

6. SAME—BOND OF PUBLIC OFFICER—EFFECT OF SURETY'S DEATH.
The death of a surety on the bond of an officer of the United States does not relieve his estate from liability for a breach of the conditions of the bond occurring subsequent to his death, but during the term of office for which the bond was given, where it in terms binds the obligors and their several heirs, executors, and administrators.

7. SAME—ACTION ON OFFICER'S BOND—DISMISSAL AS TO ONE DEFENDANT.
The liability of the obligors in the bond of a federal officer is joint and several, and the erroneous dismissal by the court of an action on such bond, as against the executors of a deceased surety, does not invalidate a judgment subsequently rendered therein against each of the other sureties.

In Error to the Circuit Court of the United States for the Northern District of California.

Rodgers, Paterson & Slack, for plaintiffs in error Pond and others.
S. F. Leib, for plaintiff in error Union Trust Co.
Marshall B. Woodworth, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was brought against Osca M. Welburn and sureties upon his official bond as collector of internal revenue for the First district of California. The condition of the bond is that:

"If the said Osca M. Welburn shall truly and faithfully execute and discharge all the duties of the said office according to law, and shall justly

and faithfully account for and pay over to the United States, in compliance with the orders and regulations of the secretary of the treasury, all public moneys which may come into his hands or possession, and if each and every deputy collector appointed by said collector shall truly and faithfully execute and discharge all the duties of such deputy collector according to law, then the above obligation to be void and of no effect: otherwise it shall abide and remain in full force and virtue."

The amount of the bond is $100,000. There were eight sureties upon the bond. One of them (William P. Dougherty) died March 14, 1894, within six weeks after Welburn assumed the duties of his office, and before any defalcation occurred therein. Another surety (James Thomas Murphy) died after the commencement of this action, and the Union Trust Company of San Francisco, having been appointed executor of the estate, was regularly made a party defendant. The cause was tried before the court without a jury. The case was speedily tried. The court promptly ruled upon all objections made, and at the close of the trial rendered a judgment in favor of the United States against each of the plaintiffs in error for the sum of $45,979.27 and costs of suit. The amount sued for was $41,030.33. The amount proven was $40,870.47. The balance of the judgment was for interest allowed under the provisions of section 3624, Rev. St. There are numerous assignments of error, nearly all of which are purely of a technical nature. We shall notice only those upon which counsel chiefly rely.

1. It is claimed that the court erred in striking out the third defense set up in the answer of the sureties, which, among other things, avers that for more than one year and a half prior to the 16th day of June, 1897, the plaintiff had full knowledge of all the facts and conditions which are alleged in the complaint as constituting a breach of the conditions of the bond: that the defendants had no knowledge thereof; that Welburn was financially responsible, and able to make good to the United States the deficit in his accounts; that the plaintiff had the means and opportunity to compel him so to do, but took no action in regard thereto; that defendants would have had like opportunity to compel him so to do if they had been informed as to the facts; that said plaintiff neglected and failed to notify the defendants of the facts, and did not inform these defendants of the failure of the said Welburn to account for and pay over the moneys received by him until long after Welburn's failure, and long after the defendant Welburn became insolvent and unable to pay any of his debts and liabilities; that by reason of the failure of the plaintiff to inform these defendants of the failure of Welburn to pay over and account for said moneys, and by reason of the insolvency of Welburn, these defendants have lost the opportunity to protect themselves as sureties by collecting from him the amounts which it is alleged he had so neglected and failed to account for and pay over. The ruling of the court in striking out this defense must be sustained by the express provisions of the statute of the United States "requiring notice of deficiency in accounts of principals to be given to sureties upon bonds of United States officials, and fixing a limitation of time within which suits shall be brought against said

sureties upon said bonds," approved August 8, 1888, which provides that:

"It shall be the duty of the accounting officers making such discovery to at once notify the head of the department having control over the affairs of said officer of the nature and amount of said deficiency, and it shall be the immediate duty of said head of department to at once notify all obligors upon the bond or bonds of such official of the nature of such deficiency and the amount thereof; * * * but a failure to give or mail such notice shall not discharge the surety or sureties upon such bond." 25 Stat. 387.

The ruling is also supported by the general principle of law, which is well settled, that "the government is not responsible for the laches or the wrongful acts of its officers." See authorities cited upon this subject under point 5.

In Hart v. U. S., 95 U. S. 316, 318, 24 L. Ed. 479, 480, the court said:

"Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect."

2. It is also claimed that the court erred in striking out the fourth defense set forth in the answer of the sureties. This defense, briefly stated, is to the effect that one Norton, a deputy collector of internal revenue under Welburn, had embezzled the money claimed to be due and owing from Collector Welburn. In the face of the language of the bond itself, and of the provisions of section 3148, Rev. St., which declares that each internal revenue collector "shall, in every respect, be responsible both to the United States and to individuals, as the case may be, for all moneys collected, and for every act done or neglected to be done by any of the deputies while acting as such," it would seem that we ought to have been spared the time of investigating this assignment of error. The government, in accepting bonds from an officer, does not become an insurer to protect the sureties thereon against loss. The fact that a deputy steals or embezzles the public money, or stamps, which are the equivalent of money, under the charge of the collector, is wholly immaterial. The principal and his sureties are liable if the principal does not properly account therefor, no matter in what way, or by whom the same may have been taken, unless it be by the act of God or the public enemy. The general rule upon this subject is to the effect that public officers who are intrusted with public funds, and required to give bonds for the faithful discharge of their official duties, are not mere bailees of the money, to be exonerated by the exercise of ordinary care and diligence. Their liability is fixed by their bond. The fact that money is taken, embezzled, or stolen from them without any fault or negligence upon their part does not release them from liability on their official bonds. Bosbyshell v. U. S., 23 C. C. A. 581, 77 Fed. 945; U. S. v. Bryan (C. C.) 82 Fed. 290, 292; Bryan v. U. S., 33 C. C. A. 617, 90 Fed. 473, 53 L. R. A. 218; U. S. v. Zabriskie (C. C.) 87 Fed. 714, 718;

Smythe v. U. S., 46 C. C. A. 354, 107 Fed. 376, and authorities there cited; State v. Nevin, 19 Nev. 162, 164, 7 Pac. 650, 3 Am. St. Rep. 873, and authorities there cited.

3. It is claimed that "the court erred in allowing the statement made up by the subsequent collector acting after the suspension of Welburn to be admitted in evidence as binding Welburn, or proving any case against him." Thomas had been a deputy under Welburn. After Welburn's suspension he was appointed, under the provisions of section 3149, Rev. St., as amended by section 2 of the act of March 1, 1879 (20 Stat. 327), acting collector; and the statement to which objection was made was signed by him as "acting collector," and simply covers the official transactions of Welburn for the last quarter of his term of office. The record shows that when the objections were first made to the statement the court sustained them on the ground that Thomas could not "bind the collector as acting collector." The witness then testified that he was still a deputy, as acting collector, under Mr. Welburn's bond. The witness Thomas then gave independent testimony showing as a fact that the statement signed by him as acting collector was true. Thereupon the United States offered "the last quarterly account, having proved by the witness the fact that the accounts are proper," and the statement was then admitted against the objection of counsel. The testimony of Mr. Thomas made out a clear prima facie case. He was not cross-examined, and no testimony was offered by the plaintiffs in error in opposition thereto. It is therefore unnecessary to discuss the question whether the statement of the acting collector would of itself, independent of the testimony, be sufficient to bind Welburn and his sureties.

4. It is next claimed that "the evidence is insufficient to justify the findings, and the court erred in finding that the defendant Welburn received money aggregating $40,870.47, or any other sum of money, which he failed to account for and pay over to the United States." Counsel say that the utmost that the evidence proved or tended to prove is that said collector was charged with having received certain beer stamps which were not found in the office on examination by the subsequent acting collector; that there was no showing that such beer stamps were not afterwards turned over to the United States by said Welburn, nor was there anything showing, or evidence tending to show, that he had ever received any money for such stamps; that there is not a scintilla of evidence in the record to show that Welburn ever received any money which was not turned over. The testimony shows beyond controversy a deficit in the accounts of Welburn of stamps amounting to $40,340.69$^8$/$_{10}$. This is the face value charged against Welburn as so much money. These stamps were missing and unaccounted for by Welburn for the quarter ending June 29, 1897, when he was suspended. The stamps were not in the office. It is true that, in a certain sense, stamps are not money. But the stamps represented a money value, and were, in the debit and credit accounts kept by the government with Welburn, charged as so much money. The stamps were the equivalent of money. It was the official duty of

Welburn either to turn over the stamps to the government, or to pay it the face value thereof. He did neither. He was a defaulter, and the amount of his defalcation was clearly proved. Was not this sufficient to establish the fact that Welburn did not "truly and faithfully execute and discharge all the duties of the said office according to law," which was one of the conditions in his bond, and for a violation of which he and his sureties are liable? Counsel seem to think (at least, they so argue) that, in order to enable the government to recover upon the proofs, it was necessary for it to have brought an action against Welburn for damages for not returning the stamps, or for the value of the same, for having converted them, and contend that the action is distinctly brought for not performing his contract to pay over money which he had received for them. The argument of counsel is based upon a misapprehension of the contract made by the sureties; their contention in regard thereto being that there were two contracts of Welburn which the bond covered, viz. a contract that he would turn over all money which he had received from sales of stamps, and a contract that he would return all unsold stamps. They admit that a violation of either contract would render him and his bondsmen liable, but claim that a violation of one contract cannot be alleged, and recovery had upon proof that the other contract had been violated, and upon this statement seek to have applied the principle that a party cannot sue upon one cause of action, and defeat his adversary upon another. There is virtually but one contract, covering three conditions: (1) That Welburn should faithfully execute and discharge all the duties of his office according to law; (2) account for and pay over to the United States all moneys which may come into his hands; (3) to be responsible for the acts of his deputies. For a violation of either the bondsmen were liable. But counsel single out one of the averments in the complaint, viz.: "The said defendant Osca M. Welburn did, as such collector of internal revenue, collect, receive, and obtain possession of divers public moneys as aforesaid, the same being moneys derived through the sale by him, as such collector, of beer stamps, cigar and tobacco stamps, playing-card stamps, spirit stamps, special tax stamps, cigarette stamps, and from other sources arising from and connected with the internal revenue service of said district, amounting in all to the sum of $41,030.33,"—and contend that the action is based solely upon the ground that Welburn sold the stamps and received money for them, and that the proofs only show that he had received certain stamps which he failed to turn over or account for. What more was necessary? Was this not enough to hold him and his sureties liable under the provisions of the bond? There are several averments in the complaint alleging, among other things, that Welburn has not kept or performed the conditions of the bond; that he has not discharged the duties of the trust imposed upon him; that he has not complied with the rules, orders, and regulations of the secretary of the treasury, and has not paid over or accounted for all moneys belonging to the United States which came into his possession by virtue of his office, etc. It is not unusual, nor is it

improper, in transactions of this character, to make separate averments concerning the same transaction in different forms. It might have been more artistic to have alleged that Welburn received stamps of the value of so many dollars, and that he had failed to account therefor. It was unnecessary to have alleged that he sold them. It made no difference whether he sold them or received any money therefor, whether he embezzled them, or whether they were stolen by a deputy or a stranger. His innocence or his guilt is wholly immaterial. He is responsible in either event, and his sureties are liable, because it is so nominated in the bond. It was enough to prove that he received the stamps by virtue of his office, and had failed to properly account for them to the government This is not an action for the conversion of personal property, but it is an action upon a bond of a public officer, and must be governed and controlled by the principles of law which apply to such bonds. It is well settled that a bond requiring a faithful performance of official duty is as binding upon the principal and his sureties as if all the statutory duties and official regulations of the office were inserted in the bond.·

5. The next point urged by counsel is that "the court erred in overruling the objection that the claim sued on had not been presented to the executor of James T. Murphy." In support of their objection, counsel cite section 1502 of the Code of Civil Procedure of California, which reads as follows: "If an action is pending against the decedent at the time of his death, the plaintiff must in like manner present his claim to the executor or administrator, for allowance or rejection, authenticated as required in other cases; and no recovery shall be had in the action unless proof be made of the presentations required,"—and claim that it is applicable to this case, under the general principle that when the United States appears as a suitor it voluntarily submits to the law, places itself upon the same footing with other litigants, and is not entitled to remedies which cannot be granted to individuals. U. S. v. Beebee (C. C.) 17 Fed. 36; U. S. v. Barker, 12 Wheat. 559, 6 L. Ed. 728; U. S. v. Ingate (C. C.) 48 Fed. 251, 253; U. S. v. State Bank, 96 U. S. 30, 36, 24 L. Ed. 647. This general principle is well settled, but it is always qualified and limited by the rule that neither the statute of limitations nor laches will bar the government of the United States as to any claim for relief in a purely governmental matter. U. S. v. McElroy (C. C.) 25 Fed. 804; U. S. v. Southern Colorado Coal & Town Co. (C. C.) 18 Fed. 273; U. S. v. Belknap (C. C.) 73 Fed. 19, 20; U. S. v. Beebe, 127 U. S. 338, 344, 8 Sup. Ct. 1083, 32 L. Ed. 121; U. S. v. Insley, 130 U. S. 263, 9 Sup. Ct. 485, 32 L. Ed. 968. In U. S. v. Adams (C. C.) 54 Fed. 115, the precise question here involved was presented. That was an action upon the official bond of one Kelly as United States marshal. The sureties, as a defense, averred that during the time the estate was in process of settlement the plaintiff was notified that said estate was being settled, and plaintiff was requested to present any claim which it might have against said Kelly; that the plaintiff failed and neglected to present any claim to the administrator of the estate;

that by reason of the carelessness and negligence of the plaintiff the preference and priority of payment of the United States (Rev. St. U. S. § 3466) was wholly lost, and the entire estate was distributed to other creditors, and defendants were prevented from exercising the right of subrogation; and they relied upon the same general principle for which the plaintiffs in error here contend. These averments in the answer were stricken out upon the ground that the facts therein stated, if true, constituted no defense to the action. The court, in the course of its opinion, said:

"The general rule that laches is not imputable to the government is essential to the preservation of the interests and prosperity of the public. It is founded upon public policy. Any other doctrine would be ruinous in the extreme. The government can only transact its business by and through its officers and agents, and its fiscal operations are so various, and its agencies and officers so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses if the doctrine of laches could be applied to its transactions. The supreme court of the United States has uniformly and repeatedly declared that, in a case like the present one, laches cannot be set up against the government. U. S. v. Kirkpatrick, 9 Wheat. 735, 6 L. Ed. 199; U. S. v. Van Zandt, 11 Wheat. 190, 6 L. Ed. 448; U. S. v. Nicholl, 12 Wheat. 509, 6 L. Ed. 709; Dox v. Postmaster General, 1 Pet. 318, 7 L. Ed. 160; Gibson v. Chouteau, 13 Wall. 99, 20 L. Ed. 534; Gaussen v. U. S., 97 U. S. 584, 24 L. Ed. 1009; U. S. v. Thompson, 98 U. S. 489, 25 L. Ed. 194; Steele v. U. S., 113 U. S. 129, 5 Sup. Ct. 396, 28 L. Ed. 952; U. S. v. Railway Co., 118 U. S. 120, 6 Sup. Ct. 1006, 30 L. Ed. 81."

In U. S. v. Railway Co., supra, the court said:

"It is settled beyond doubt or controversy, upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided, that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless congress has clearly manifested its intention that they should be so bound."

U. S. v. Insley, 130 U. S. 263, 265, 9 Sup. Ct. 485, 32 L. Ed. 968; Stanley v. Schwalby, 147 U. S. 508, 514, 13 Sup. Ct. 418, 37 L. Ed. 259; U. S. v. American Bell Tel. Co., 159 U. S. 548, 554, 16 Sup. Ct. 69, 40 L. Ed. 255; Id., 167 U. S. 225, 265, 17 Sup. Ct. 809, 42 L. Ed. 144.

The statute of California above quoted does not come within the provisions of section 914, Rev. St. U. S., relating to "the practice, pleadings and forms and modes of proceeding in civil causes."

In U. S. v. Thompson, supra, it was held that the United States, whether named in a state statute of limitations or not, is not bound thereby, and when it sues in one of its own courts such a statute is not within the provisions of the judiciary act of 1789 (1 Stat. 73), which declares that the laws of the states, in trials at common law, shall be regarded as rules of decision in the courts of the United States in cases where they apply. The state statute does not bar the United States from a recovery against the executor of the Murphy estate. As was said in U. S. v. Backus, 6 McLean, 443, Fed. Cas. No. 14,491:

"The exclusive jurisdiction given to the probate court, in the settlement of decedents' estates, cannot affect the claims of the government, however it may bear on private claims. The mode of proceeding in the probate court,

and the time given for the settlement of accounts, cannot regulate the claims of the government, nor affect the remedies given to it under its own laws. The demand in this case has been adjusted by the accounting department under the laws of congress, and there can be no obligation to present the account for adjustment to the probate court of Michigan. Such a rule of procedure would subject the action of the federal government to the regulation of a state government. The federal government being entitled to a priority over other creditors, by the enforcement of its demand no injustice is done to the general creditors. It could not have been contemplated by the legislature of Michigan that the law should apply to the general government as a creditor. Such a construction of the act is not required from its language. It is true, there is no exception in it, but the exception necessarily arises from the nature of the case. Executors are responsible under the laws of the state, but their liability attaches on the acceptance of the trust. The eighteen months given for the adjustment of accounts against the estate of the decedent relates to the remedy, and cannot apply to a demand of the federal government."

It follows from the views herein expressed that the ruling of the court upon this point was correct.

6. Finally it is claimed that the court erred in overruling the objections to the release of the executors of William P. Dougherty, thus putting the whole burden on the other defendants. The executors of the estate of Dougherty were released upon the admission of the United States attorney that the defalcation of Welburn did not occur until long after the death of Dougherty. In this ruling the court erred. The bond declares in express terms that the principal and sureties "are held and firmly bound unto the United States of America in the full and just sum of one hundred thousand dollars, moneys of the United States to which payment, well and truly to be made, we bind ourselves, jointly and severally, our joint and several heirs, executors, and administrators." In Hecht v. Weaver (C. C.) 34 Fed. 111, 112, Judge Deady, said:

"On a careful examination of the authorities, I have concluded that whenever the undertaking of the surety is of a definite period, as for the conduct of an officer during his term of office, or for the repayment of advances made to the principal in the bond until notice is given the obligee that his liability is terminated, the estate of the surety in the hands of his administrator is answerable for any default of the principal occurring after his death; and this is especially so where, as in this case, the surety bound himself, his 'heirs, executors, and administrators,' for the performance of his undertaking. Insurance Co. v. Davies, 40 Iowa, 469, 20 Am. Rep. 581; Green v. Young, 8 Greenl. 14, 22 Am. Dec. 218; Knotts v. Butler, 10 Rich. Eq. 143; Moore v. Wallis, 18 Ala. 458; Hightower v. Moore, 46 Ala. 387; Mowbray v. State, 88 Ind. 327."

See, also, U. S. v. Keiver (C. C.) 56 Fed. 422.

But this error of the court does not in any manner affect the liability of the other sureties on the bond, nor the separate judgments entered against them. The bond is joint and several. It could be enforced against one or all of the sureties. Code Civ. Proc. Cal. § 383; U. S. v. Lawrence, 1 Cranch, C. C. 94; Fed. Cas. No. 15,575; 15 Enc. Pl. & Prac. 116, and authorities there cited. "It is always proper to sue in one suit all the parties severally liable on the bond, to enforce the several liability of each." U. S. v. Tracy, 8 Ben. 1, Fed. Cas. No. 16,536. If the court had not dismissed the action as against the executors of the estate of Dougherty, the re-

suit of the judgments against the plaintiffs in error would have been precisely the same. But, inasmuch as the dismissal might result in depriving them of their right to contribution from that estate of its proportion of the indebtedness which the plaintiffs in error may be compelled to pay, the order of dismissal is hereby set aside.

The judgment against each of the plaintiffs in error is hereby affirmed, with costs.